25 N.J. Super. 601 (1953)
96 A.2d 720
MEL KENNEDY, ET ALS., PLAINTIFFS,
v.
WESTINGHOUSE ELECTRIC CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 8, 1953.
*602 Mr. Milton Stavis (Messrs. Gross & Blumberg, attorneys), appeared for the plaintiffs.
Mr. William Dill, Jr. (Messrs. Stryker, Tams & Horner, attorneys), appeared for the defendant.
CONLON, J.C.C. (assigned).
This is a class action brought by the eight plaintiffs on behalf of themselves and of some 700 fellow members of the United Electrical, Radio & Machine Workers of America (U.E. Local No. 456) to recover compensation for hourly employment for Labor Day which fell on September 3, 1951. The compensation *603 for each plaintiff is stipulated at amounts varying between approximately $14 and $20. The case was tried without a jury and from the evidence adduced the court finds the following facts:
During the summer of 1951 the plaintiffs were employed in the defendant's elevator plant in Jersey City. They were members of the aforementioned union, and their employment was controlled by a formal written agreement dated November 1, 1950 between the union and the defendant. The plaintiffs contend that the contract was an undertaking of the union and the local and consequently was not binding on the individual members. This contention is not tenable since a collective bargaining agreement is the joint and several contract of the members of the union made by the officers of the union as their agents. Dooley v. Lehigh Valley R.R. Co. of Pa., 130 N.J. Eq. 75 (Ch. 1941), affirmed 131 N.J. Eq. 468 (E. & A. 1942); Christiansen v. Local 680 of the Milk Drivers & Dairy Employees of N.J., 126 N.J. Eq. 508 (Ch. 1940).
The pertinent provisions of the agreement which bear upon the present dispute are the following:

"SECTION VII  STRIKES, STOPPAGES, AND LOCKOUTS.
A. The Union and the Locals will not cause or officially sanction their members to cause or take part in any strike (including sit-downs, stay-ins, slow-downs, or any other stoppage of work) during the life of this Agreement."

"SECTION XII  HOLIDAYS AND VACATIONS.
1. Holidays
(a) Holidays observed by the Companies will be New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas. Holidays falling on Sunday will be observed on Monday.
(b) All hourly paid employees who have completed three (3) month's continuous service immediately preceding the holiday will be paid for their established shift hours on a holiday observed between Monday and Friday both inclusive.
(d) The above payment will be made only to hourly paid employees who are on the active roll as of the day before the holiday within the week and who earn some wages during the week in which the holiday falls or any of the four preceding weeks."
*604 With the foregoing binding contractual relations existing between them, the evidence establishes that the following events transpired:
During the summer of 1951 the parties were negotiating a supplement to the contract which had to do with seniority rights. Obviously the negotiations were not progressing to the satisfaction of the employees and beginning on July 12, 1951 they instituted a practice of refusing to work for the full eight hours of their prescribed employment. Thus, from July 12 to August 24 they worked only six hours a day. On August 27 and 28 they worked full eight hours, but beginning August 29 and continuing until September 11 they worked from 3 1/2 to six hours a day. On Friday morning, August 31, the officers of the union were notified that if the employees did not work the full day they would not be paid for the following Monday which was Labor Day, and hence a holiday for which the contract provided they should be paid without working. In spite of this warning the employees worked only 5 1/2 hours. On the following September 11 the employees were informed that if they did not work a full day the plant would be closed down. They only worked 6 1/2 hours, and on September 12 the plant was actually closed down so far as the hourly-paid employees were concerned. On September 13 when they returned to work the pay checks delivered to the employees did not include compensation for Labor Day. Thereafter the employees continued to work full time.
The defendant contends that the action of its employees constituted an unwarranted "stoppage of work" in violation of the contract. The plaintiffs, on the other hand, contend that there was no work stoppage, but that on the contrary the employees took off from work to attend essential union meetings to discuss the pending negotiations surrounding the proposed supplemental contract. That factual contention must be resolved in favor of the defendant. Without discussing the evidence in detail, the conduct of the employees and the literature disseminated by the union among its members clearly indicates that the cessation from work each *605 day under the guise of attending union meetings was in fact a method of the union to put unwarranted pressure on the employer to make concessions in the then pending negotiations. The court, therefore, finds as a fact that the actions of the employees constituted a work stoppage which was interdicted by section VII(A) of the contract, and that as a consequence the plaintiffs deliberately and illegally violated the terms of the existing agreement.
By virtue of the foregoing finding of facts the defendant contends it was justified in withholding the holiday pay by reason of the breach of contract by the plaintiffs.
The defendant urges two grounds in that respect. First, it contends that the employees did not qualify themselves for the holiday pay, and second, that since the plaintiffs had violated the terms of the contract, the defendant was not obliged to comply with the clause of the agreement providing for the payment of holiday pay.
Under the provisions of section XII of the contract the employees became entitled to the holiday pay if they fulfilled three requirements: (1) completed three months continuous service immediately preceding the holiday; (2) were on the active roll as of the day before the holiday, and (3) earned some wages during the week in which the holiday fell or any one of the four preceding weeks. It is conceded that the employees fulfilled the latter two of the prerequisites. The defendant contends, however, that they had not fulfilled the first requirement in that due to the work stoppage they had not completed three months continuous service. To give such a construction to the terms of the contract would be to do violence to the plain meaning of the words. The term "continuous service" must be tantamount to "uninterrupted employment." It cannot be construed to signify a rigid compliance with the prescribed hours of work. Concededly, the employment of the plaintiffs was never discontinued. They remained in the employ of the defendant during the entire period involved. The contract had not been terminated, and the employees were continuously carried on the company's payroll.
*606 The plaintiffs, under the terms of the agreement, did not interrupt their continuous employment and consequently did not forfeit their right to holiday pay merely by indulging in the so-called work stoppages.
The defendant further contends that since the plaintiffs have violated the terms of section VII of the agreement by indulging in work stoppages, the defendant is absolved from its obligation to pay for holiday time. The difficulty with that position is that there is no interdependency between the agreement not to strike  including work stoppages  and the agreement to allow holiday pay.
The contractual provision for holiday pay does not constitute either a gratuity or a gift, but is rather additional wages for services to which the employee becomes entitled upon the performance of the obligations imposed by the contract. Textile Workers Union v. Paris Fabric Mills, Inc., 22 N.J. Super. 381 (App. Div. 1952). Holiday pay is not a bonus for efficient service or for a good attendance record. The right to it accrues to the employee if, at the time it becomes due, he is working for the employer and has fulfilled the other requirements necessary to entitle him to the additional pay. Assuming, as has been determined above, that the plaintiffs had complied with the three conditions which entitled them to the holiday pay, the defendant could not legally forfeit it so long as the contract remained in force between it and its employees.
The work stoppage indulged in by the plaintiffs was a breach of their agreement, but the breach of that phase of the contract was independent of the provision for holiday pay. To hold otherwise would in effect justify the defendant in standing by and enforcing the other terms of the contract, but at the same time withholding any one or more of the fringe benefits which the employees enjoyed under the contract.
So long as the parties by their actions continued to abide by the contract between them, the provisions as to work stoppage and holiday pay were not interdependent covenants. So long as the defendant continued to enjoy the benefits due *607 it under the agreement it was bound to comply with all of its provisions. Cf. Rothman Realty Corp. v. MacLain, 16 N.J. Super. 280 (Ch. Div. 1951), affirmed 21 N.J. Super. 172 (App. Div. 1952); Kinney v. Federal Laundry Co., 75 N.J.L. 497 (E. & A. 1907).
It is not necessary to decide whether the actions of the plaintiffs gave the right to the defendant to terminate the agreement. Since the provisions against strikes and work stoppages appear to be the very basis of what the defendant received under the contract, it would seem that the breach by the employees went to the very essence of the contract and would have legally warranted the defendant in terminating it. The fact is, however, that it did not. It continued the contract in existence and attempted to penalize the employees by forfeiting one of the fringe benefits provided for therein. The holiday pay had no more relation to the breach than had many other benefits accruing to the employees under the contract, and so long as the defendant confirmed the existing contract it was bound to abide by all of its terms including the one relating to holiday pay.
Whether or not the defendant had an alternative remedy by way of counterclaim for damages for the breach by the plaintiffs or whether it was entitled to injunctive or other equitable relief is, of course, not before the court.
The plaintiffs having established their right to the holiday pay in question, judgment will be entered in their favor. A judgment may be presented in the form stipulated by the parties at the trial.