TEXTILE WORKERS UNION OF AMERICA, C. I. O., AN
UNINCORPORATED ASSOCIATION, PLAINTIFF-APPEL-
LANT, v. BELLMAN BROOK BLEACHERY COMPANY,
A NEW JERSEY CORPORATION, DEFENDANT, AND:
UNITED TEXTILE WORKERS OF AMERICA, A. F. OF
L., AN UNINCORPORATED ASSOCIATION, DEFENDANT-
RESPONDENT.

TEXTILE WORKERS UNION OF AMERICA, C. I. O., AN UN-
INCORPORATED ASSOCIATION, PLAINTIFF-APPEL-
LANT, v. RESISTOFLEX CORPORATION, A NEW YORK
CORPORATION, DEFENDANT AND THIRD-PARTY
PLAINTIFF, AND UNITED TEXTILE WORKERS OF
AMERICA, A. F. OF L., AN UNINCORPORATED ASSOCIA-
TION, THIRD-PARTY DEFENDANT-RESPONDENT.

Argued April 25, 1955—Decided May 23, 1955.

*Mr. Sidney Reitman* argued the cause for appellant (*Messrs. Kapelsohn, Lerner, Leuchter & Reitman*, attorneys).

*Mr. Thomas L. Parsonnet* argued the cause for respondent.

The opinion of the court was delivered by
HEHER, J. An issue common to both cases concerns the respective rights of the parties under a "check-off" provision of a collective bargaining agreement negotiated by a general association of unions with the employer of members of a local union which later disaffiliated itself; and in one we also have the question of whether there was an effective exercise of the conceded power of secession.

Plaintiff is an "international" union comprising local unions of employees in the textile manufacturing and related industries. By separate agreements made with the Bellman

Brook Bleachery Company on October 29, 1951, to "take effect" as of the prior October 1st and continue to September 30, 1953, and with the Resistoflex Corporation on October 9, 1951, to continue until August 21, 1953, the plaintiff union was "recognized" as the "sole and exclusive bargaining agency" for certain of the employees of Bellman and Resistoflex; and the employers severally agreed to deduct from wages the union dues of such of its employees as should give written authorization for that course and make monthly remittance to plaintiff. Union membership was made a condition *sine qua non* of employment during the continuance of the agreement. The check-off authorizations were given in writing by the employees within the coverage of the agreements, subject to revocation under given conditions; and there was also an express acceptance of membership "in the Textile Workers Union of America, C. I. O."

On April 18, 1945 the plaintiff union was certified by the National Labor Relations Board as collective bargaining agent for Bellman's employees, and thereafter plaintiff chartered Local 707, TWUA-CIO as their local union. And Local 831 was chartered by plaintiff for the employees of Resistoflex.

On May 15, 1952, it is conceded, Local 707 effected a "valid" disaffiliation from the plaintiff union, and thereupon accepted a charter from the defendant United Textile Workers of America, A.F.L. On May 22d ensuing, the latter demanded of Bellman recognition as the bargaining agent of its employees, and on December 4 following, after election held, it was certified as such by the National Labor Relations Board.

Bellman deposited with the Clerk of the Superior Court the checked-off dues thereby put in controversy; and the Superior Court, by the judgment under review, allowed to the plaintiff union the dues checked off before the local's disaffiliation, and to the defendant AFL the dues so collected thereafter.

Bellman's agreement with plaintiff declared, Article IV, section 4, that the check-off was a "voluntary undertaking"

by Bellman for the "sole convenience and accommodation of the Union," and Bellman's "failure or neglect" to deduct such dues would place it under "no liability" to the plaintiff union.

On May 16, 1952, at a special meeting of Local 831, it was resolved that "we should get out of TWUA-CIO and affiliate with United Textile Workers AFL." The minutes of the meeting show that a vote on the proposal "was taken and carried 100% in favor, none against."

The plaintiff union challenged the validity of the action thus taken and, invoking its constitution, appointed an administrator of the local unit and demanded of Resistoflex compliance with the check-off provision of the agreement, but Resistoflex refused and made known a claim for the dues by the successor AFL local affiliate.

On June 23, 1952 Resistoflex executed a collective bargaining agreement with the defendant AFL union, in all respects the same as its agreement of October 9, 1951 with plaintiff; and on September 2d ensuing the defendant AFL submitted to Resistoflex written revocations of all check-off authorizations theretofore made by its employees in favor of plaintiff, all such revocations dated between July 1 and 10, 1952.

We shall advert hereafter to the reasons which in the plaintiff's view served to render the purported disaffiliation abortive. It suffices now to say that the jurisdiction of the National Labor Relations Board was not invoked, and there was no certification of the defendant AFL as the collective bargaining agent of the employees of Resistoflex, nor was the plaintiff union "decertified as such representative," but even so this employer honored its bargaining agreement with the AFL. And, as in the Bellman case, the judgment allowed to plaintiff the dues checked off prior to the claimed disaffiliation of May 16, 1952, but there was a dismissal as to dues deducted thereafter.

The basic contention, largely one concerning contract law, is that union dues thus deducted from employees' wages under a collective bargaining agreement between a "parent

union and an employer constitute an enforceable contract right of the parent union which can not be impaired solely by the disaffiliation of a subordinate unit, and continues until the contract is terminated by its terms, by mutual consent of the parties, or by operation of law."

More particularly, it is said that the "check off" was a "contract expedient" to "effectuate the collection of union dues as required by the union security provisions of the contracts with plaintiff, which required the employees to continue their membership in plaintiff as a condition of employment," and so the "obligation of continuance of membership and payment of dues" involved "substantial rights" giving rise to an interest the assignments to plaintiff "were designed to effectuate," an interest flowing from plaintiff's "status as the party to the collective agreement, paramount to any other claimant."

But this view of the status and relation of the parties *inter se* would place a limitation on the fundamental right of employees to unite and bargain collectively through representatives of their own choosing that is not to be found in the contract. The plaintiff union's constitution reserved to the local units the right of disaffiliation; and in its very nature secession terminates the contractual affiliation and all ties between the parent body and the severed local, save as may be provided otherwise by legislative authority. Upon the exercise of the retained power, but subject to this proviso, the plaintiff union's bargaining agency for the separated local and its members becomes *functus officio*; the disaffiliation ends all relations between the parent association and the local and its members, except as the lawgiver has ordained to the contrary in the service of an overriding public interest; and it is a corollarial consequence that, when the severance becomes effective, the obligation of dues, depending as it does upon membership, comes to an end.

Such is the essence of the contract here. The right of disaffiliation was inherent in the compact. The check-off was merely a device in aid of the collection of dues and, by force of the separation, the plaintiff union lost the interest

requisite to sustain the assignments. The assignments are but instruments of contract policy of no concern whatever to the parent body once disaffiliation is had pursuant to the underlying contract. This is a quality predicable of the affiliation itself, basic in the consensual relation. The parent union's "contractual rights and interests" are "subject throughout to a valid exercise of the retained right of disaffiliation"; and once the separation becomes effective there is an end to the relationship and all rights and interests, whether of property or otherwise, dependent upon its continuance. *Harker v. McKissock*, 12 *N. J.* 310, 325 (1953).

But it is said that in the cited case "membership was in the local alone" and the "basic rule" of the case was that the parent union "was not a signatory party to the agreement," quoting from the opinion, while the interest of the plaintiff union in the contract here under review "is original because of its status as a party to the contract" and "is not derived indirectly by reason of the affiliation of the locals with the plaintiff," and "such interest as the locals had in the collective bargaining contract and checked-off dues was contingent upon continued affiliation of the locals with the plaintiff and continuation as plaintiff's designee, as provided in the agreements to which plaintiff was the party," and thus "it was the subordinate locals that had the derivative interest."

There is no distinction of substance in this regard. The difference is not material to the essential principle of *Harker v. McKissock*. In the assessment of the relational status there, it was noted that the parent body was not a signatory party to the collective bargaining agreement made with the employer. But it was not offered as a circumstance of determining significance on the particular inquiry; nor could it be when considered in the context and the rationale of the holding. Disaffiliation terminated the contractual relation and all rights and interests incident to its continuance. The interpretive principle thus tendered by plaintiff would emasculate the provision for disaffiliation, a basic consideration. Disaffiliation could entail other legal consequences, depending upon the terms of the particular contract, *e. g.*,

a turnover of interests in property. See *Harker v. McKissock*, 7 *N. J.* 323 (1951), rehearing denied 8 *N. J.* 230 (1951); *Walter Kidde & Co., Inc., v. United Electrical, Radio & Machine Workers of America, CIO*, 7 *N. J.* 528 (1951). The comparison serves to illustrate the reason and animating principle of the compact.

By the same token, the continuance of the collective bargaining agreement between plaintiff and the employer for the prescribed term depended upon the local unit's continued affiliation with plaintiff; the engagement was in its nature so conditioned. Disaffiliation concluded plaintiff's bargaining agency for the seceded local, and its contract with the employer to that end lost all *in futuro* operative force. This would seem to be axiomatic. The provision for dues-paying membership in the plaintiff union, as a condition of employment, was effective only so long as the affiliation continued. The contrary construction would be incongruous, although the consequences of severance may be reasonably controlled in the general interest, *e. g.*, to promote responsible administration and good labor relations.

*Valley Mould & Iron Corporation v. National Labor Relations Board*, 116 *F.* 2d 760 (7th *Cir.* 1940); *National Labor Relations Board v. Blanton Co.*, 121 *F.* 2d 564 (8th *Cir.* 1941), and kindred cases cited by plaintiff are concerned with intra-local conflicts as to the choice of a bargaining agent or the continuance of such delegated authority, and they are not apropos where, as here, the power to bargain was ended by the withdrawal of the local affiliate from the general association.

And, where disaffiliation is effected, *section* 302 of the Federal Labor Management Relations Act of 1947, 29 *U. S. C. A., section* 186, read as forbidding the payment of checked-off dues save as authorized in writing by the particular employee, cannot serve the parent union. In that event, it can no longer avail itself of the check-off; and it is not concerned with what the employer may do in that regard.

But the employees' freedom to select their bargaining representative is contained by the federal legislative policy

lately expounded by the Supreme Court, following conflicts of view in the Courts of Appeal as to the Board's power under the one-year certification rule of the Taft-Hartley Act of 1947, 61 *Stat.* 136, 29 *U. S. C. A., section* 159, after a valid certification or decertification election. Beyond the one-year certification period, said Mr. Justice Frankfurter, the employer "can ask for an election or, if he has fair doubts about the union's continuing majority, he may refuse to bargain further with it. This, too, is a matter appropriately determined by the Board's administrative authority." *Brooks v. National Labor Relations Board,* 348 *U. S.* 96, 75 *S. Ct.* 176, 180, 182, 99 *L. Ed.* —— (1954).

There are no legislative or contractual considerations making for a continuance of plaintiff's bargaining agency for the departed local and the right of check-off incident to the membership thus withdrawn until a new certification by the National Labor Relations Board. The act of separation terminated the membership and the reciprocal burden of dues. Disaffiliation is effective immediately under the contract. Continued representation after the schism would not accord with the reason or spirit of the consensual association; quite the contrary.

As to Bellman, plaintiff concedes, as said at the outset, a "valid disaffiliation" on May 15, 1952.

As to Resistoflex, there had been no prior express certification of plaintiff as the bargaining representative of its employees. The Board certified on April 19, 1948 that a majority of the employees had voted to authorize plaintiff to make an agreement with the employer "requiring membership" in the plaintiff union "as a condition of employment in conformity with the provisions of *section* 8(a)(3) of the National Labor Relations Act, as amended, in a unit appropriate for such purposes in which no question concerning representation exists."

We find there was substantial compliance with the requirements of plaintiff's constitution and laws in the notice given of the special meeting of Local 831, called to consider and act upon the proposed shift of affiliation. The notice was timely

and sufficient in its statement of the purpose of the meeting. All but one of the members entitled to vote on the stated question of separation were present and participated in the meeting. The absentee was ill at the time, and died not long thereafter. There was a unanimous vote for disaffiliation. And there has been no complaint from any of the local's members of insufficient notice or other irregularity in the proceedings or the action taken. The change-over has had the acquiescence of the entire membership.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice WACHENFELD—1.