39 N.J. Super. 163 (1956)
120 A.2d 640
MILK DRIVERS AND DAIRY EMPLOYEES, LOCAL 680, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
CREAM-O-LAND DAIRY, A CORPORATION OF NEW JERSEY, AND DAIRY WORKERS ASSOCIATION, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS, AND MILK DRIVERS AND DAIRY EMPLOYEES LOCAL 680, PLAINTIFF-RESPONDENT,
v.
CREAM-O-LAND DAIRY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1956.
Decided February 6, 1956.
*167 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Thomas L. Parsonnet argued the cause for Milk Drivers and Dairy Employees Local 680 (Messrs. Parsonnet, Weitzman & Oransky, attorneys).
*168 Mr. Edward W. Currie argued the cause for Cream-O-Land Dairy (Mr. Harold J. Sklarew, attorney).
Mr. Ernest Gross argued the cause for Dairy Workers Association.
The opinion of the court was delivered by CLAPP, S.J.A.D.
We have before us here an appeal and a cross-appeal from the Chancery Division, an appeal from the Law Division and a petition invoking the original jurisdiction of this court and seeking an injunction in aid of the appeals.
The litigation was commenced in the Chancery Division by an action brought by the Milk Drivers and Dairy Employees, Local 680, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, American Federation of Labor. The plaintiff Local seeks through that action: first, specific performance of a collective bargaining agreement, designated the New York Metropolitan Milk Agreement effective October 24, 1953, and an agreement dated October 26, 1953 between the plaintiff and the defendant employer, Cream-O-Land Dairy, allegedly binding the employer to the former agreement; and, second, a declaratory judgment pronouncing these agreements (and another agreement that need not be mentioned) to be valid, existing and binding obligations. In this action the Dairy Workers Association, a union presently representing all of Cream-O-Land's employees (perhaps 20 in number, excluding office and supervisory personnel), intervened as a defendant. The trial court denied specific performance, from which denial plaintiff appeals; but the court declared the New York Metropolitan Milk Agreement to be a valid, existing and binding obligation between plaintiff and Cream-O-Land, from which declaration defendants cross-appeal. We deal with plaintiff's appeal under Section V of this opinion and with the cross-appeal under Section VI.
After securing the above judgment, plaintiff brought an action in the Law Division to compel the defendant employer *169 to arbitrate certain demands allegedly arising under the above-mentioned New York Metropolitan Milk Agreement effective October 24, 1953. The trial court ordered arbitration as to the plaintiff's following contentions, all as stated in the following paragraphs of the judgment entered in that action:
"1. That the defendant shall dismiss from its employment all employees who are within the unit covered by the collective bargaining agreement between said parties who are not members in good standing of the Union.
2. That the defendant pay to all employees within the unit covered by the said collective bargaining agreement, retroactive to October 24, 1953, the wages required to be paid by said agreement, including the overtime rates for hours worked in excess of eight hours per day for inside workers and in excess of forty hours per week for all employees.
3. That the defendant pay to the Trustees of the Milk Industry  Drivers and Dairy Employees Unions Welfare and Pension Trust Fund, a sum equal to fifteen cents for each straight time hour during which any of said employees was employed since 4:01 p.m. on October 24, 1953, and for each such hour thereafter worked by said employees.
4. That in the employment of any new employee, the defendant shall comply with the provisions of paragraph 4(c) and 4(d) of said agreement.
5. That the defendant provide for each and every employee in its employment on or after October 24, 1953, the payment for holidays, for time worked on `days off' required by the agreement, the vacation rights, or payment in lieu thereof, as required by Schedule D of the Contract."
The employer appealed from that judgment. We deal with this appeal also under Section VI of this opinion.
While these appeals were pending, the employer, seeking to avail itself of the provisions of the New York Metropolitan Milk Agreement effective October 24, 1953, concededly gave notice to the plaintiff, dated July 11, 1955, attempting to prevent an automatic renewal of that agreement on October 24, 1955. Plaintiff thereafter filed a petition in this court, asking us for an injunction which would restrain the employer from terminating or attempting to terminate the agreement. This petition we deal with under Section IV of the opinion.
*170 There are three preliminary questions which arise in connection with each of the problems before us.

I.

HAVE THE STATE COURTS JURISDICTION?
This point has been passed by the parties.
A very substantial part of Cream-O-Land's business is interstate in character. Accordingly, Cream-O-Land and later the defendant, Dairy Workers Association, applied to the National Labor Relations Board in 1954 to have the Board determine which union (the plaintiff or the defendant Dairy Workers Association) had the right to represent Cream-O-Land's employees. The Board, after a hearing lasting (allegedly) two days, held that the amount of Cream-O-Land's interstate business was insufficient to meet the criteria established in its regulations as a condition for the exercise of its jurisdiction. The Board was concerned merely with the question whether the plaintiff represents or may represent the employees; whereas the issues presented to us go beyond that matter and perhaps are not even cognizable by the Board.
But whether or not these issues were cognizable there, we conclude that the state courts have power to furnish the relief sought in the proceedings before us. See in general Busch & Sons, Inc., v. Retail Union of N.J. Local 108, 15 N.J. 226, 233, 234 (1954); Browning King Co. of N.Y. v. Local 195, 34 N.J. Super. 13, 31 (App. Div. 1955), and authorities cited; Rose, The Labor Management Relations Act and the State's Power to Grant Relief, 39 Va. L. Rev. 765 (1953).

II.

DOES FEDERAL OR STATE LAW CONTROL OUR DETERMINATIONS HERE?
Is there a federal substantive law displacing state law generally in connection with all aspects of the enforcement of collective bargaining agreements? See Cox, Federalism in the *171 Law of Labor Relations, 67 Harv. L. Rev. 1297, 1335-1339 (1954); cf. Association of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp., 348 U.S. 437, 452-461, 75 S.Ct. 489, 99 L.Ed. 510, 520-525 (1955), stating the view of three Justices that there is no such federal law; for the differing view of three other Justices, see 348 U.S. 463-465, 75 S.Ct. 502-503, 99 L.Ed. 526, 527; Annotation, 99 L.Ed. 529, 533.
We conclude that it makes no difference here whether federal or state substantive law governs. With respect to the issues before us, the federal and state law, as we conceive it to be, is alike.

III.

HAS THE PLAINTIFF AUTHORITY TO SUE FOR THE ENFORCEMENT OF THE COLLECTIVE AGREEMENT IN THE CHANCERY AND LAW DIVISION ACTIONS, AND TO APPLY FOR AN INJUNCTION FROM US, NOTWITHSTANDING THAT CREAM-O-LAND'S EMPLOYEES HAVE ALLEGEDLY REPUDIATED THE AGREEMENT?
The great majority of Cream-O-Land's employees signed applications for membership in the plaintiff union on October 26, 1953, paying one dollar (most of them apparently paying no more) toward their membership dues. On November 1, 1953, they seem to have approved the New York Metropolitan Milk Agreement. But on November 6, 1953, about half of Cream-O-Land's employees organized the defendant, Dairy Workers Association. This Association, which represents all of Cream-O-Land's employees presently and has represented them for some time, states to this court in a brief submitted by it jointly with Cream-O-Land, that the employees have "repudiated * * * the Milk Industry Collective Bargaining Agreement insofar as it applied to them" and have asked Cream-O-Land to "disregard" the agreement, including provisions therein as to pay and hours. These assertions are disputed by the plaintiff, but we may assume them to be the fact for the purposes of this Section of the opinion.
*172 Defendants argue that plaintiff was but an agent for Cream-O-Land's employees, that the employees revoked the agency and that they and Cream-O-Land then jointly modified the New York Metropolitan Milk Agreement so far as it affected them. There is no direct evidence of such a modification; but for the purposes of this Section of the opinion we will assume it was proved, and we will assume further that the modification was effected without any coercion on the part of the employer. Can the employees and the employer thus terminate any right the plaintiff has to enforce the agreement?
To sustain the theory of agency, defendants rely on Kennedy v. Westinghouse Elec. Corp., 25 N.J. Super. 601, 603 (Law Div. 1953), but the case was reversed. The Supreme Court in that case, 16 N.J. 280, 285, 286 (1954), points out the difficulties presented by the theory of agency. It points out this "fact," namely 
"that the collective bargaining agreement establishes a structure of employment relations not just for particular known employees but for persons from time to time employed during the contract term and not always members of or desiring to be members of the contracting union" (Italics added)
The court adds:
"Do plaintiffs [employees] sue as the principals under a contract made for them by the union as their agent? Or are we to consider the union the principal and the employees third-party beneficiaries of the agreement? Both theories encounter difficulties. The agency theory poses the question how an employee may become party to the agreement if he is neither a member of the union nor wants to be or, if employed after the agreement is made, is not shown to have adopted it or to have contracted his hire with reference to it. And what is left to the union by way of direct rights of enforcement of provisions important to it as an organization, the union shop, for example? * * * However, if the employees are to be considered third-party beneficiaries, can it always be said that the union and the company made the agreement primarily for the employees' benefit or are they not often merely incidental beneficiaries, particularly if it is not made to appear that they contracted their hire with reference to the agreement? Teller, supra, pp. 497 to 505. These and like questions emphasizing the difficulties experienced in applying ordinary contract concepts in solving problems arising under collective *173 bargaining agreements have led some students to suggest that `we need a new legal category' to explain and govern such agreements." (Italics added)
In certain respects Congress, too, has rejected common-law doctrines of agency. See Brooks v. N.L.R.B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1955).
The law, both federal and state, is concerned with the stabilization of industrial relations, see Brooks v. N.L.R.B., supra; National Labor Relations Bd. v. Sanson Hosiery Mills, 195 F.2d 350 (5 Cir. 1952); and the collective bargaining agreement "is viewed as itself an effective instrument of stabilizing labor relations and minimizing industrial strife during its term." Kennedy v. Westinghouse Elec. Corp., supra, 16 N.J., at page 285.
Seeking thus to further industrial stability, the federal law confers during the period of the collective bargaining contract a measure of durability (subject to exceptions) to the rights created by the contract, even with respect to the matter of the union's right to represent the employees. See National Labor Relations Bd. v. Efco Mfg. Inc., 203 F.2d 458 (1 Cir. 1953); Kearney & Trecker Corp. v. National Labor Relations Bd., 210 F.2d 852, 857 (7 Cir. 1954); Iob v. Los Angeles Brewing Co., 183 F.2d 398, 404 (9 Cir. 1950); Annotation, 42 A.L.R.2d 1415, 1437 (1955); but cf. Modine Mfg. Co. v. Grand Lodge Intern. Ass'n of Mach., 216 F.2d 326 (6 Cir. 1954), where the National Labor Relations Board had certified a union as bargaining agent and the court's decision perhaps turned on the effect of a certification. Recognition is thereby given, in some measure, to the sanctity of the contractual element in the collective contract.
Even where there is no contract, the Taft-Hartley Act in the interests of stabilizing relations seeks to prevent a decertification election for a period of one year after the Board has certified a union as the employees' representative. 29 U.S.C.A. 159(c)(3); Brooks v. N.L.R.B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1955); National Labor Relations Bd. v. Sanson Hosiery Mills, 195 F.2d 350, 352 *174 (5 Cir. 1952); see Textile Workers Union of America v. Bellman, etc., Co., 18 N.J. 476, 484 (1955). Aliter, if a union has not been so certified. National Labor Relations Bd. v. Mayer, 196 F.2d 286, 289 (5 Cir. 1952); National Labor Relations Bd. v. Reeder Motor Co., 202 F.2d 802, 803 (6 Cir. 1953); Annotation, 42 A.L.R.2d 1415, 1423 (1955).
In general as to the continuing contractual effect of a collective bargaining agreement between an employer and a union after disaffected employees have resigned from the union, compare Local 60, etc., v. Welin Davit & Boat Corp., 133 N.J. Eq. 551 (Ch. 1943); Triboro Coach Corp. v. New York St. Labor Relations Bd., 286 N.Y. 314, 318, 36 N.E.2d 315, 318, 144 A.L.R. 410 (Ct. App. 1941); Suffridge v. O'Grady, 84 N.Y.S.2d 211, 219, 220 (Sup. Ct. 1948); Lenhoff, 39 Mich. L. Rev. 1109, 1126-1131 (1941), discussing the effect of change of membership upon collective bargaining contracts.
We conclude that under the state and federal law, the collective bargaining agreement subsists at least for certain purposes after it has been (as we have assumed) rejected by the employees. As will appear herein, we need in this case go no further than to hold that it survives such a rejection sufficiently to enable the plaintiff to make the application for the injunction (Section IV of the opinion) and to obtain certain relief by way of arbitration. Cf. R.R. 4:30-1. We express no opinion as to the effect of the agreement otherwise.

IV.

PETITION TO APPELLATE DIVISION FOR AN INJUNCTION
This is a somewhat novel application, instituted in aid of the appeals from the Chancery and Law Division judgments, asking us to exercise our original jurisdiction. N.J. Const. 1947, Art. VI, Sec. V, par. 3; R.R. 1:5-4(a), 2:5.
The New York Metropolitan Milk Agreement according to its terms is to remain effective from October 24, 1953 to October 24, 1955, and thereafter *175 "shall * * * continue in effect from year to year unless, not less than ninety (90) days prior to the expiration date, or prior to the end of any succeeding year, written notice of termination shall be given by either the Union or the Employer to the other by registered United States mail."
As above stated, the employer by a notice of termination dated July 11, 1955, sought to prevent an automatic renewal of the agreement on October 24, 1955. The notice states that it is given without prejudice to the employer's claim that it (the employer) was never a party to the agreement.
The union claims the employer cannot take advantage of the above-quoted provision of the agreement since it has refused to perform the agreement for two years. The doctrines of election, estoppel, waiver and unclean hands are said to bar the employer from claiming the benefit of one provision of a contract when refusing to abide by the other provisions thereof.
We will accept jurisdiction of the application in conformity with the spirit of the constitutional provision above cited. But we fail to see why the employer, under any of the doctrines relied on by the plaintiff, should be precluded from preventing a renewal of the agreement. Prior to the service of the notice, the employer had been arguing before the trial court that the agreement was invalid and not binding on it. When the trial court held against it, the employer then sought to forestall the attachment of obligations arising after October 24, 1955 under an extension of the agreement in the event that we should hold (as the trial court had) that the agreement is valid prior thereto. Is it inequitable for the employer so to protect its subsequently accruing interests pending an appeal, in case the trial court should be affirmed? The rule prohibiting a party from maintaining inconsistent positions in judicial proceedings has never been extended to this length.
The proofs brought before us through this petition of the plaintiff lead to a determination that the agreement came to an end on October 24, 1955, and our opinion will proceed on the basis of that determination. This presents a case *176 differing somewhat from that which was before the trial court.

V.

APPEAL IN ACTION FOR SPECIFIC PERFORMANCE
We need not discuss the problems presented by an action for specific performance of a collective bargaining contract. See in general Sanford v. Boston Edison Co., 316 Mass. 631, 56 N.E.2d 1, 156 A.L.R. 644 (Sup. Jud. Ct. 1944); 5 Corbin, Contracts (1951), p. 853; Annotation, 156 A.L.R. 652 (1945). For the questions here are practically eliminated by our decision stated in Section IV of the opinion, that the New York Metropolitan Milk Agreement was not extended as to Cream-O-Land after October 24, 1955. It follows of course that we need not concern ourselves with the specific performance of rights allegedly arising under any such extender. Weber v. Nasser, 210 Cal. 607, 292 P. 637 (1930), dismissing appeal from 286 P. 1074 (Cal. App. 1930); McDonald v. B. and B.D. and H. and W., L. Union No. 792, 215 Minn. 274, 9 N.W.2d 770 (Sup. Ct. 1943).
Furthermore, a claim for specific performance as to rights accruing under the agreement prior to October 24, 1955 amounts to nothing more than a claim for arbitration. For the collective bargaining agreement contains a broad provision as to arbitration:
"23. (a) Any and all disputes and controversies arising under or in connection with the terms or provisions of this agreement, or in connection with or relating to the application or interpretation of any of the terms or provisions hereof, or in respect to anything not herein expressly provided but germane to the subject matter of this agreement, which the representatives of the Union and the Employer have been unable to adjust, shall be submitted for arbitration to an arbitrator selected" etc. (Italics inserted)
Indeed, plaintiff union on the oral argument conceded, in effect, that if the agreement came to an end on October 24, 1955, its claim to specific performance fell. It requested, however, that the trial court retain jurisdiction *177 over the Chancery Division cause by a provision (as it used to be said) "at the foot" of the judgment, in case at some future time plaintiff wanted to apply summarily for arbitration as to matters not referred to in the action for arbitration dealt with in Section VI of this opinion. But we see no sufficient reason for a retention of this cause; a separate action for arbitration can be instituted summarily under present practice. N.J.S. 2A:24-3.

VI.

CROSS-APPEAL ATTACKING CHANCERY DIVISION DECLARATORY JUDGMENT DECLARING THAT THE NEW YORK METROPOLITAN MILK AGREEMENT, EFFECTIVE OCTOBER 24, 1953, IS A VALID, EXISTING AND BINDING AGREEMENT. APPEAL FROM LAW DIVISION JUDGMENT DIRECTING ARBITRATION AS TO FIVE ISSUES.
A declaratory judgment can be secured only with respect to concrete issues actually in controversy; such relief is designed for the achievement of practical purposes. New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240 (1949). The only concrete issues laid before us on the appeal are the five set forth in the judgment entered in the arbitration action in the Law Division. See the five paragraphs of that judgment quoted above. Hence we cannot pass upon the propriety of the application for declaratory relief without first considering these five issues.
In view of our decision that the contract came to an end on October 24, 1955, there obviously cannot be raised any question either as to the dismissal of the present employees of Cream-O-Land (the issue presented in paragraph 1 of the judgment for arbitration), or as to the employment of new employees from now on (see paragraph 4 thereof). We therefore eliminate these questions from our consideration and turn to the issues dealt with in paragraphs 2, 3 and 5 of that judgment.
There are two preliminary matters here which we may dispose of summarily. In the first place, arbitration may *178 be had of legal as well as factual issues, even though a court feels itself better equipped to resolve particularly the legal issues. Shannon v. Pennsylvania Edison Co., 364 Pa. 379, 72 A.2d 564 (Sup. Ct. 1950); Smith, Coney & Barrett v. Becker, Gray & Co. (1916), 2 Ch. 86, 95 (C.A.); 6 C.J.S., Arbitration and Award, § 10; N.J.S. 2A:24-1; cf. Held v. Comfort Bus Line, Inc., 136 N.J.L. 640 (Sup. Ct. 1948); Collingswood Hosiery Mills v. American, etc., Workers, 31 N.J. Super. 466 (App. Div. 1954).
In the second place, a court should not order the arbitration of a contention, lending its powers of compulsion to the arbitration process, unless it would appear to an ordinary layman that the contention is reasonably open to dispute. If the contention is such that no ordinary layman, acting in good faith, would seriously advance it, then arbitration will be denied. Standard Oil, etc., Union v. Esso Research, etc., Co., 38 N.J. Super. 106, 115 (App. Div. 1955).
This brings us to the substantial questions, and first, to the claim made under paragraph 3 of the arbitration judgment, as follows:
"That the defendant pay to the Trustees of the Milk Industry  Drivers and Dairy Employees Unions Welfare and Pension Trust Fund, a sum equal to fifteen cents for each straight time hour during which any of said employees was employed since 4:01 p.m. on October 24, 1953, and for each such hour thereafter worked by said employees"  (see Section IV of this opinion) until October 24, 1955 at 4 p.m.
The question, as above stated, is whether an ordinary layman would seriously claim that this issue is reasonably open to dispute. The proofs here are not sufficient to enable us to determine whether Cream-O-Land's employees rejected the New York Metropolitan Milk Agreement and whether for that or any other reason they are precluded from benefits under the Welfare and Pension Trust Fund or under the agreement. Nevertheless, assuming they are so precluded, the question arises whether on that account Cream-O-Land's obligation to the trustees of the Fund was thereupon extinguished. *179 Or is Cream-O-Land's agreement to make payments to the trustees of the Fund sufficiently independent of its employees' rights and benefits under the contract as to subsist even though the rights and benefits have been terminated? Furthermore, can it be said that the persons interested in this agreement of Cream-O-Land include not only Cream-O-Land's employees who might have benefited under the Fund, but also thousands of employees of milk companies in Northern New Jersey; it may be said that if the base of the fund is broadened, the fund is stronger actuarily?
There are other considerations involved here that need not be mentioned; we think enough has been stated to indicate that there is a question which an ordinary layman could seriously claim is reasonably open to dispute. The arbitrator will have to determine, among other things, the subsidiary question above suggested (as to which the proofs here are insufficient), namely, whether the employees have been precluded from benefits under the New York Metropolitan Milk Agreement, or, in any event, under the Trust Fund. Even if they have been precluded, the arbitrator in the exercise of the authority entrusted to him may still determine that the employer is bound to make payments to the Trust Fund pursuant to the Milk Agreement. We indicate no opinion on any phase of the broad issue submitted. The arbitrator may make an award either to the trustees or in favor of Cream-O-Land.
It will be perceived that under Section III of this opinion we have held that the plaintiff has the right to have the court compel arbitration (where relief by way of arbitration is appropriate), even though Cream-O-Land's employees have repudiated the union and (as we assumed under Section III) rejected the New York Metropolitan Milk Agreement. On the other hand we leave it to the arbitrator to determine what effect such a rejection by the employees of the benefits under that agreement (if in fact they did reject the same) would have upon Cream-O-Land's obligation under the pension and welfare provisions of that agreement.
*180 In the proceedings before the arbitrator the trustees of the Welfare and Pension Fund should be joined as parties. Cf. R.R. 4:32-1.
The other substantial question relates to the plaintiff union's contentions set out in paragraphs 2 and 5 of the arbitration judgment as follows:
"2. That the defendant pay to all employees within the unit covered by the said collective bargaining agreement, retroactive to October 24, 1953, the wages required to be paid by said agreement, including the overtime rates for hours worked in excess of eight hours per day for inside workers and in excess of forty hours per week for all employees.

* * * * * * * *
5. That the defendant provide for each and every employee in its employment on or after October 24, 1953, the payment for holidays, for time worked on `days off' required by the agreement, the vacation rights, or payment in lieu thereof, as required by Schedule D of the Contract."
We think that generally there is much force to the holding of five justices of the Supreme Court in Association of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp., 348 U.S., at pages 457, 465-467, 75 S.Ct., at pages 498, 503-504, 99 L.Ed., at pages 523, 528, that where an employer refuses to pay wages in violation, allegedly, of a collective bargaining agreement between the union and the employer, the union may sue for these wages on behalf of the employees. Cf. Christiansen v. Local 680, of Milk Drivers, etc., 126 N.J. Eq. 508, 512 (Ch. 1940); Dooley v. Lehigh Valley R. Co., 130 N.J. Eq. 75, 81 (Ch. 1941), affirmed 131 N.J. Eq. 468 (E. & A. 1942); Cox, Rights under a Labor Agreement, 69 Harv. L. Rev. 601, 638-645 (1956). The employees presumably welcome the union's assistance. Moreover, where a union attempts to unionize an area, it has an interest, as an organization, in maintaining wages at union rates among all employers in the area. Cf. Hotel & Restaurant Employees Union v. Tzakis, 227 Minn. 32, 33 N.W.2d 859, 862, 863 (Sup. Ct. 1948). Indeed, our Supreme Court in the passage from Kennedy v. Westinghouse Elec. Corp., supra, 16 N.J., at 285, quoted *181 earlier in this opinion, also referred to the union's interest in securing "direct rights of enforcement of provisions [in a collective agreement] important to it as an organization, the union shop, for example."
But here we are concerned with wages and compensation due employees where a representation is made to the court, apparently on behalf of all the employees, that they repudiate the suit and want no part of such wages or compensation. In order to raise an arbitrable question in such a case, the union should be made to establish its authority to sue for them. The plaintiff union in bringing such a suit is a quasi-fiduciary for the employees: Cox, supra, page 615. If it should recover the wages and compensation specified in paragraphs 2 and 5 of the judgment, it will be required forthwith to pay to the employees any amount awarded on their behalf. Does the union intend to prosecute this arbitration proceeding for the benefit of employees who apparently have repudiated it?
On the remand of the case, proof will have to be taken to determine whether plaintiff has authority to sue for the persons who were Cream-O-Land's employees between October 24, 1953 and October 24, 1955. Cream-O-Land should also be accorded an opportunity either to present a stipulation by the employees waving their right to the wages and compensation stated or to prove that this right is barred by a voluntary agreement on the part of the employees or an estoppel or otherwise. The trial court after a consideration of this proof can determine whether under the circumstances an ordinary layman would say that the question whether the employees have any right to the wages and compensation, is reasonably open to dispute.
So much for the contentions stated in paragraphs 2 and 5 of the arbitration judgment. Having reviewed the only concrete issues actually in controversy, we return to a consideration of the declaratory judgment in the Chancery Division. That judgment may be confusing to the arbitrator. It declares that the provisions of the New York Metropolitan Milk Agreement are binding; and at the same time the arbitration *182 judgment asks him to determine whether, for example, the provision to pay moneys to the trustees of the Welfare and Pension Fund has any effect. Hence we shall reverse the grant of declaratory relief, except insofar as it resolves certain matters litigated below (which have not been challenged on the appeals), namely, that the agreement was validly entered into between the plaintiff and Cream-O-Land and is not vitiated by fraud. Except in those respects, the declaratory relief seems to be superfluous.
The judgment in the Chancery Division, insofar as it grants declaratory relief, is therefore reversed except in the respects last stated; and it is affirmed insofar as it denies specific performance.
The arbitration judgment entered in the Law Division will be modified as follows: the contention stated in paragraph 3 (as to the period between October 24, 1953 and October 24, 1955) of that judgment will be submitted to arbitration as provided in the judgment; the contentions stated in paragraphs 1 and 4 will not be submitted to arbitration; and the contentions stated in paragraphs 2 and 5 will be dealt with as above set forth.
Furthermore, an order should be submitted to us denying the application to this court for injunctive relief, but that order should adjudicate that the New York Metropolitan Milk Agreement, insofar as it may affect Cream-O-Land, expired October 24, 1955.
Modified. No costs.