730 A.2d 907

JUA FUNDING CORPORATION, PLAINTIFF–RESPONDENT,
v. CNA INSURANCE/CONTINENTAL CASUALTY
COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 18, 1999—Decided June 23, 1999.

Before Judges LONG, KESTIN and WEFING.

*Lee A. Rosengard,* argued the cause for appellant (*Stradley, Ronon, Stevens & Young,* attorneys; *Mr. Rosengard,* of counsel and, with *Francis X. Manning,* on the brief).

*Michael O'B. Boldt,* argued the cause for respondent (*Scarinci & Hollenbeck,* attorneys; *Mr. Boldt,* of counsel and, with *Craig M. Lessner,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

When this case began, it was about plaintiff's right to receive money from defendant. Despite the public policy arguments advanced by plaintiff to fortify its position, that has not changed. Because plaintiff has received every cent of the money to which it claimed a legal entitlement, the matter is moot. For that reason, we vacate the trial court's order granting plaintiff's motion for summary judgment, and dismiss the complaint.

Plaintiff is in the business of acquiring rights to litigation proceeds. It was the assignee of the last three payments due Marlene DeMaria Hanke (tort plaintiff or assignor) from defendant pursuant to a structured settlement of her tort claim against defendant's insured. According to the terms of the settlement, those payments were to be made on January 17, February 17, and March 17, 1998. The assignment was acquired as part of a loan transaction between plaintiff and the assignor. Despite a provision in the settlement agreement that the payments due thereunder "shall not be subject to assignment, transfer, commutation or encumbrance," plaintiff, in loaning its assignor $1,353, took back the assignment of her right to receive the last three $463 payments under the structured settlement, as well as a promissory note obliging the borrower to repay the loan in three installments of $463 each also due on January 17, February 17, and March 17, 1998.* The assignor signed a "notice of direction of payments," instructing defendant that all payments due her under the settlement agreement should be sent to plaintiff, and stating: "You are hereby advised that pursuant to Article 9 of the Uniform Commercial Code, I have *collaterally assigned* all remaining payments due to me under the above referenced Settlement Agreement to JUA Funding Corporation and I direct you to make payments to them."

---

\* The promissory note provided that if defendant "agree[d] in writing to honor the terms of the ... assignment," the repayment obligation would be reduced to $459 per installment.

Plaintiff sent the notice to defendant on December 11, 1997, and, on December 29, 1997, almost three weeks before the first of the three payments was due, filed a complaint against defendant alleging a violation of *N.J.S.A.* 12A:9–318 by reason of defendant's refusal to acknowledge and make payments under the assignment. The complaint sought a declaratory judgment that the assignment and the notice to defendant were "in all respects proper and effective," including rulings that the settlement's prohibition against assignment was unenforceable because it was against public policy, that plaintiff was the owner of all rights under the assignment, and that annuity payments by defendant to other parties would not discharge its obligations to plaintiff. Plaintiff also sought a preliminary and permanent injunction ordering defendant to make the annuity payments, and damages.

Plaintiff filed a motion for summary judgment on February 6, 1998. Argument was heard on the adjourned return date, March 20, 1998. In a letter opinion, the trial judge determined that the assignment was valid under Article 9 of the Uniform Commercial Code and other provisions of New Jersey law. An order granting summary judgment to plaintiff was, accordingly, entered. The judgment awarded plaintiff the amount due on the structured settlement, $1,353, plus interest; the mandatory injunctive relief sought; and the declarations of legal rights which plaintiff had pursued.

It was undisputed that, by the time the summary judgment motion was heard, the first two of the three final payments under the settlement had been paid by defendant to the tort plaintiff on schedule, that the checks had been endorsed by her to plaintiff, and that plaintiff had presented those checks for payment. Thus, as to the first two installments on its loan, plaintiff's right to repayment had clearly been satisfied. The fate of the last payment was a mystery, however; and, after oral argument on the appeal, we temporarily remanded the matter to the trial court for a hearing and findings on the disposition of the last payment due under the structured settlement between defendant and plaintiff's assignor and the last payment due under the loan agreement between plaintiff and its assignor.

Based on evidence from the assignor and knowledgeable persons associated with each of the parties, the trial judge shall make findings on the following questions, and such other factual issues she may determine to bear upon the question of mootness....

After the necessary consideration, the trial judge provided her findings in a letter:

This matter comes before me by way of a detailed remand from the Appellate Division.... The thrust of the remand is directed toward the issue of mootness.

This issue was first raised before me in the defense opposition papers on the original motion. The issue of mootness, which was a serious concern to me, was directly addressed at length at oral argument on March 20, 1998. * * * At that argument, Mr. Boldt, counsel for JUA, represented in response to my questioning that the final payment in question had not been received by his client. Mr. Manning, counsel for CNA, represented that he had been unable to confirm that his client had issued a check for the final payment.

At that time I believed that those representations disposed of the mootness issue, and based on those representations, I decided the case on the merits.

As a result of the remand, the parties have submitted a stipulation, two certifications and an affidavit, ... which answer all the issues presented in the [remand] order. In response to the individual questions in the remand, and based on the submissions, I make the following factual determinations.

1) **Was the last payment on the structured settlement remitted to the assignor by defendant?**

Yes.

2) **Was it received?**

Yes.

3) **If so, how did the assignor dispose of the payment?**

She gave this final payment directly to James Terlizzi, plaintiff's principal.

4) **Why (at whose election or by whose instruction) was it disposed of in the manner chosen?**

This was done by the assignor because she understood it to be her obligation. I infer it was done at the direction of Mr. Terlizzi.

5) **Did the assignor remit the last installment due on her loan from the plaintiff? If so, when?**

Yes. The check was given to Mr. Terlizzi within a week of the assignor receiving it.

6) **Has plaintiff received the last installment due on its loan to the assignor? If so, when?**

Yes. Although Mr. Terlizzi cannot specifically recall receiving the last check from the assignor, he does not dispute that she gave it to him and stipulates that he received it about a week after its receipt by the assignor. Since the

check was issued on March 17, 1998, I draw the inference that plaintiff had this check by the end of the month.

7) **If, in the light of the assignor's past practice of making timely payments of the other installments due on the loan, she has not made the last payment due, why was that payment not made? Did the assignor receive any instructions in this regard from anyone connected with either party or any of its principals?**

Not applicable. *Assignor did make the last payment due on her loan as indicated above.*

8) **Is the assignor related by blood, marriage, social involvement or employment to either party or any of its principals?**

The assignor was involved in a social relationship with Mr. Terlizzi, who is an officer of JUA. She was dating him at the time she entered into the loan agreement. The relationship ceased about one month after the final payment was made.

The remand also states that I should make findings on other factual issues that bear on the issue of mootness. I note that Mr. Terlizzi has stipulated that JUA intentionally did not negotiate the final check and that JUA chose this as a test case.

■ With these findings it is clear that plaintiff's entitlement to the third and last payment is a moot issue. Plaintiff has received every penny due it. Nevertheless, plaintiff argues that the questions presented are not moot, among other reasons, because of an entitlement to proceed under the Uniform Declaratory Judgment Act (the Act), *N.J.S.A.* 2A:16–50 to –62. We regard this argument as meritless in the context presented. Except for plaintiff's interest in an advance determination of a conceptual problem, there are no concrete issues before us.

■ The declaratory judgment mechanism was designed to "end uncertainty about the legal rights and duties of the parties to litigation in controversies which have not yet reached the stage at which the parties seek a coercive remedy." *New Jersey Ass'n for Retarded Citizens v. Department of Human Services,* 89 *N.J.* 234, 242, 445 *A.*2d 704 (1982) (citing *Union County Bd. of Chosen Freeholders v. Union County Park Comm'n,* 41 *N.J.* 333, 336, 196 *A.*2d 781 (1964)). For the Act to apply, an actual controversy between the parties is required, to prevent the court that pronounces declaratory judgment from rendering an advisory opinion.

*Id.* at 241, 445 *A.2d* 704; *Milk Drivers and Dairy Employees v. Cream–O–Land Dairy,* 39 *N.J.Super.* 163, 177, 120 *A.2d* 640 (App.Div.1956).

In the present case, after defendant had made the last payment due the tort plaintiff under the settlement, and that payment was remitted to plaintiff herein, plaintiff's election not to negotiate the check could not re-create a cause of action where one no longer existed. Because plaintiff was entitled to negotiate the check, it did not face the type of uncertainty about its rights to receive its due (repayment of the loan) which the declaratory judgment mechanism was designed to eliminate. None of the issues which plaintiff sought to litigate had any remaining vitality.

"[R]elief by way of a declaratory judgment should be withheld when the request is in effect an attempt to have the court adjudicate in advance the validity of a possible defense in some expected future law suit." *Donadio v. Cunningham,* 58 *N.J.* 309, 325, 277 *A.2d* 375 (1971). This is not to say that a party is precluded from litigating a test case, by way of a declaratory judgment suit or otherwise, when it claims existing rights which are realistically threatened. But every test case, whether by way of a declaratory judgment suit or otherwise, must be properly structured to present real issues regarding existing interests. When a party's rights lack concreteness from the outset or lose it by reason of developments subsequent to the filing of suit, the perceived need to test the validity of the underlying claim of right in anticipation of future situations is, by itself, no reason to continue the process. *Milk Drivers, supra,* 39 *N.J.Super.* at 177, 120 *A.2d* 640. Furthermore, the desire to prosecute a test case is no excuse for the lack of candor which characterized this plaintiff's pre-remand representations regarding the disposition of the third payment, both in the trial court and on appeal. We note, as well, that plaintiff had no cause of action at all when it filed suit on December 29, 1997, nearly three weeks before the first payment was due on the assignment posited as the basis for plaintiff's claim. At that time, plaintiff's rights had not ripened to the point

where there was an actual controversy, *see ibid., i.e.,* that it had an interest which had matured beyond a conceptual claim and which defendant had, by some positive act or timely omission, negated.

The trial court's order granting plaintiff's motion for summary judgment is vacated and the complaint is dismissed as moot.