258 N.J. Super. 380 (1992)
609 A.2d 781
LARRY SCHIAVO AND JOAN SCHIAVO, HUSBAND AND WIFE, PLAINTIFFS-RESPONDENTS,
v.
JOHN F. KENNEDY HOSPITAL; DEFENDANT-APPELLANT, AND DR. GERALD MONTICOLLO; MICHAEL SPIVAK, D.O.; AND DR. LEVIN AND/OR JOHN DOE, M.D., A MEDICAL PROVIDER, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1992.
Decided July 17, 1992.
*382 Before Judges KING, DREIER and GRUCCIO.
Stacy L. Moore, Jr., argued the cause for appellant (Parker, McCay & Criscuolo, attorneys; Stacy L. Moore, Jr., on the brief).
Janice L. Richter argued the cause for respondents (Richter & Richter, attorneys; Janice L. Richter, on the letter brief).
The opinion of the court was delivered by KING, P.J.A.D.
We granted this motion for leave to appeal, R. 2:2-3(b), by John F. Kennedy Hospital, to resolve the issue of the retroactive effect of N.J.S.A. 2A:53A-8; L. 1991, c. 187, § 48, effective July 31, 1991.[1] This is the amendment to the charitable immunity act, N.J.S.A. 2A:53A-8, which increased hospital liability from a maximum of $10,000 to $250,000. A recurrent issue in the trial division has been whether the increased liability limit applies to claims accruing prior to the July 31, 1991 effective *383 date. We conclude that it does not. The increased liability limit applies only to claims accruing on or after the effective date of the amendment.
This appeal arises from an order entered in the Law Division on February 21, 1992, after a motion brought by appellant hospital to limit its liability in this action to $10,000 because the claim arose on January 8, 1988, well before the effective date of the amendment enhancing potential liability to $250,000. The claim arose from an alleged negligent failure to diagnose "a biceps tendon rupture" while plaintiff was an emergency room patient at the hospital on January 8, 1988. The complaint was filed on January 8, 1990, two years later, to the day.
The Law Division judge denied the hospital's motion. He concluded that since "there is nothing in the act that says it does not apply to causes of action which arose prior to the date of the act," it should have retroactive effect to claims pending on the effective date. We disagree.
The charitable immunity act relating to nonprofit hospitals was amended by § 48 of L. 1991, c. 187, as part of the comprehensive "Health Care Cost Reduction Act of 1991," see generally N.J.S.A. 26:2H-18.24 to -18.50. This act consisted of extensive and detailed legislation aimed at "health care cost containment." Id. at preamble. Included in the Act were plans for the allocation of costs for uncompensated care; the establishment of a health care cost reduction fund and regulated health care services; the purchase of major equipment; the referral of patients; the regulation of health maintenance organizations, and related concerns.
This legislation germinated in substantial part from the October 1, 1990 Report of the "Governor's Commission on Health Care Costs" (Commission Report). See Assembly Appropriations Committee Statement, Senate No. 3251; see also Transcript and Appendices of Public Hearings before Senate Institutions, Health and Welfare Committee, November 14, 1990. The Commission Report, supra, at 37-38, recommended certain *384 reforms in medical malpractice law. These proposed reforms addressed both cost and quality concerns. Among the recommendations for improving quality was Commission Recommendation 81(b) which said: "The $10,000 limitations on hospital liability should be reviewed to determine whether their repeal would provide a meaningful incentive for hospitals to oversee more zealously physicians' practices." Id. at 38.
The original bill provided for a complete removal of the cap on liability. Senate Bill No. 3251, March 11, 1991. The final version, Senate Bill No. 3251, June 13, 1991, a compromise, capped hospital liability at $250,000. The Commission had urged that increasing the hospital's liability potential would provide more meaningful hospital oversight and reduce the practice of "`defensive medicine' [used] to avoid malpractice claims, thereby needlessly inflating the cost of health care." Commission Report, supra, at 37. Our task here is not to reevaluate legislative policy but to discern legislative intent through examination of the text and any relevant circumstances which aid in understanding the text, including relevant history. "Statutes cannot be read in a vacuum void of relevant historical and policy considerations and related legislation." Matawan Borough v. Monmouth County Tax Bd., 51 N.J. 291, 299, 240 A.2d 8 (1968).
On the issue of retroactive application of a statute in a case involving veterans' preferences, we recently reiterated the general rule in this State: "statutes relating to substantive rights should be construed prospectively unless the legislature indicates otherwise." Brown v. State Dep't of Personnel & City of Atlantic City, 257 N.J. Super. 84, 607 A.2d 1354 (App.Div. 1992). In Carnegie Bank v. Shalleck, 256 N.J. Super. 23, 39, 606 A.2d 389 (App.Div. 1992), we recently said that the "reason for this general rule is that retroactive application of new statutes carries a high risk of unfairness." But the judicial quest is ultimately to ascertain legislative intent. See Twiss v. State, Dep't of Treasury, 124 N.J. 461, 466-468, 591 A.2d 913 (1991); Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95, *385 577 A.2d 1239 (1990) ("a statute that changes the settled law and relates to substantive rights is prospective only" absent "an unequivocal expression of contrary legislative intent"); Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981); LaParre v. YMCA of the Oranges, 30 N.J. 225, 229, 152 A.2d 340 (1959) (upholding the prospective application only of this immunity scheme, N.J.S.A. 2A:53A-7 to -20, which limits tort liability); Fasching v. Kallinger, 227 N.J. Super. 270, 273, 546 A.2d 1094 (App.Div. 1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989). "Fundamental fairness suggests that government give prior notice of a statute so citizens may conform their behavior before its enforcement." Twiss, supra, 124 N.J. at 466, 591 A.2d 913, citing Gibbons, supra, 86 N.J. at 522, 432 A.2d 80.
This rule of prospective application is founded on "judicial premonition that retroactive laws are characterized by want of notice and lack of knowledge of past conditions and that such laws disturb feelings of security in past transactions." 2 Norman J. Singer, Sutherland on Statutes and Statutory Construction § 41.04, at 348 (4th ed. 1986). Generally,
it is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively. Provisions added by the amendment . .. will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language . .. or by the circumstances surrounding its enactment. [1A Sutherland, supra, § 22.36, at 300-301 (4th ed. 1986).] [Emphasis added].
Three circumstances compel a retroactive application of an amendment or new statute:
(1) the legislature has expressed, either explicitly or implicitly, its intent that the statute apply retroactively;
(2) the statute is curative; or
(3) the expectations of the parties warrant the retroactive application of the statute.
See Gibbons, supra, 86 N.J. at 522-523, 432 A.2d 80; Fasching, supra, 227 N.J. Super. at 274, 546 A.2d 1094. In Gibbons, our Supreme Court discussed the issue of legislative intent:

*386 [t]his expression of legislative intent may be either express, that is, stated in the language of the statute or in the pertinent legislative history ... or implied, that is, retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation.... [Gibbons, supra, 86 N.J. at 522, 432 A.2d 80]. [Citations omitted].
In examining legislative intent, a court must first direct its inquiry to the actual language of the statute. Sheeran v. Nationwide Mut. Ins. Co., 80 N.J. 548, 556, 404 A.2d 625 (1979). There is absolutely nothing in the text of the statute that explicitly or implicitly provides for a retroactive application. There is also nothing, either explicit or implicit, in the extant legislative history that indicates an intent to apply the amendment retroactively. The legislative history is essentially the report of the Governor's Commission. The Committee hearings on November 14, 1990 themselves yield nothing of value on this specific amendment. The Commission Report, supra, at 38, tells us that the amendment was designed to "provide a meaningful incentive for hospitals to oversee more zealously physicians' practices." This purpose looks to motivate future conduct, not to enhance liabilities for past claims accruing before the effective date. We do not attribute such an unlikely motive to the Legislature in this "cost-reduction" legislative package.
The next question is whether the amendment is "curative." "The `curative' exception comes into play when a statute amends a previous law which is unclear or which does not effectuate the actual intent of the Legislature in adopting the original act." Fasching, supra, 227 N.J. Super. at 274, 546 A.2d 1094. A curative amendment's "purpose is to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act." Kendall v. Snedeker, 219 N.J. Super. 283, 288, 530 A.2d 334 (App.Div. 1987). The purpose of a curative amendment is to bring "the law into harmony with what the Legislature originally intended." Id. "Under this exception, the new statute is intended simply to explain and to clarify the existing law rather than to change the meaning of the original law." Carnegie *387 Bank v. Shalleck, supra, 256 N.J. Super. at 29-40, 606 A.2d 389. In this sense, the amendment to N.J.S.A. 2A:53A-8, L. 1959, c. 90, § 2, increasing liability exposure 25-fold, from $10,000 to $250,000 after 33 years, is not curative but a substantive policy change of some magnitude undertaken by the Legislature. This enhancement of liability no doubt implicates insurance premiums and loss exposures, at least to some extent; such matters can only be dealt with prospectively.
The third circumstance, i.e., that the reasonable expectations of the parties warrants retroactive application, holds no water in this case. The plaintiff was allegedly hurt in January 1988 and sued in January 1990. The bill to amend N.J.S.A. 2A:53A-8 was not introduced until January 24, 1991. Since the case involved tortious conduct, neither party had any reasonable reliance-type expectations in the normal contractual or commercial sense. However, we see no basis for any reasonable expectations of the parties which warrants invoking retroactive, as opposed to the customary prospective only, application of the amendment.
The Law Division judge relied on Milazzo v. Exxon Corp., 243 N.J. Super. 573, 576-577, 580 A.2d 1107 (Law Div. 1990), where the amendatory statute in pertinent part specifically said: "This act shall take effect immediately and shall apply to any action pending on that date." This is clear intent of retroactive application to preamendment litigation. Finally, the so-called "time-of-decision" rule and its equitable exceptions or qualifications are not here pertinent. Riggs v. Long Beach Tp., 101 N.J. 515, 521, 503 A.2d 284 (1986). That rule's application "arises when, after a lower court or administrative agency decision, there is a change in the relevant law that governs the disposition of the issues on appeal." Id. at 520-521, 503 A.2d 284.
We find no legislative intent or design to increase the liability of charitable hospitals retroactively by this amendment to the "Health Care Cost Reduction Act of 1991." The text of the *388 statute and the sparse legislative history give no hint of such legislative purpose. Absent some strong evidence or persuasive argument to the contrary, we apply the conventional doctrine and give the amendment prospective efficacy only from its effective date, July 31, 1991. See Phillips v. Curiale, 128 N.J. 608, 608 A.2d 895, 898-901 (1992).
Reversed.
NOTES
[1] N.J.S.A. 2A:53A-8 states:

Notwithstanding the provisions of the foregoing paragraph, any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $250,000, together with interest and costs of suit, as the result of any one accident and to the extent to which such damage, together with interest and costs of suit, shall exceed the sum of $250,000 such nonprofit corporation, society or association organized exclusively for hospital purposes shall not be liable therefor.
L. 1991, c. 187, § 86 provides: "This act shall take effect on the 30th day after enactment." The act was approved on July 1, 1991.