633 A.2d 1035

MATILDA CIAUDELLI AND NICHOLAS CIAUDELLI, PLAIN-
TIFFS–RESPONDENTS, v. CITY OF ATLANTIC CITY, ATLAN-
TIC CITY DEPARTMENT OF PUBLIC WORKS, DEFENDANTS,
AND ATLANTIC CITY MEDICAL CENTER, PAUL PETRELLA
AND GEORGE ROSS, JOINTLY, SEVERALLY OR IN THE AL-
TERNATIVE, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 14, 1993—Decided December 2, 1993.

Before Judges KING, HAVEY and A.A. RODRIGUEZ.

*David S. Lieberman* argued the cause for appellants (*Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss,* attorneys; *Peter M. Sarkos,* on the brief).

*Alan B. Taylor* argued the cause for respondents (*Taylor, Taylor and Olizi,* attorneys; *Edward R. Gallagher, Jr.,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

On this appeal the defendants, Atlantic City Medical Center (ACMC) and Paul Petrella, its assistant director of plant operations, challenge Judge Previti's July 26, 1991 ruling on the issue of

the bar of the two-year statute of limitations, *N.J.S.A.* 2A:14–2. We conclude that the amended complaint joining Petrella related back to the date of the filing of the original complaint within the meaning of *R.* 4:9–3 and that the judge's ruling refusing to bar the claim against Petrella on the statute of limitations ground was correct. We affirm.

I

The claim arose from a fall by Matilda Ciaudelli (plaintiff) on the sidewalk outside the ACMC on December 1, 1987. She was visiting her brother who was a patient at the hospital. She tripped over a "pipe stub" or stump which stuck up about six inches above the sidewalk, the residue of a parking meter which had been removed. The evidence established that after the accident, the ACMC's employees removed the pipe stub because it was a "safety risk." Plaintiff was treated in the ACMC emergency room right after the accident. A contemporaneous incident report was filed with the ACMC's risk management department which reported the incident to its insurance carrier.

Plaintiff sued the ACMC, the City of Atlantic City, and the City's Department of Public Works on August 16, 1989. Appellant ACMC filed an answer which did not include the defense of charitable immunity, which limited damages to $10,000, now $250,-000 since *L.*1991, *c.* 187, § 48. *N.J.S.A.* 2A:53A–7 and –8. *See Schiavo v. John F. Kennedy Hospital,* 258 *N.J.Super.* 380, 609 *A.*2d 781 (App.Div.1992), *aff'd o.b.,* 131 *N.J.* 400, 620 *A.*2d 1050 (1993) (increased exposure prospective only). On October 3, 1989 counsel for ACMC wrote to plaintiff's counsel declaring his intention to amend its answer to include the charitable immunity defense. On October 5 plaintiff's counsel consented to an order allowing ACMC to amend its answer to include the immunity defense. The order was filed on October 11, 1989 but ACMC's answer was never so amended.

About a year later, on October 15, 1990, well after the statute of limitations had run, ACMC filed a notice of motion seeking leave

to amend its answer to include the charitable immunity defense. Counsel filed this motion either because he was unaware or had forgotten that the prior order had been obtained and filed. Plaintiff's counsel opposed this motion to amend in a certification which he filed on October 22, 1990.

On November 26, 1990 Judge Previti granted ACMC's motion to amend its answer to include the immunity defense. In his written opinion he stated:

> It seems to me that both plaintiff's counsel and former defense counsel were sloppy in the preparation of their respective pleadings. In all accidents such as this "charitable immunity" should always be inserted in the answer as an affirmative defense to cover just such a surprise as this. [An allusion to ACMC's alleged surprise at eventually finding out that plaintiff was not just a passerby but was visiting her brother, a patient.]
>
> Plaintiff's counsel learned in law school to name all potential tortfeasors, even "John Does," if necessary, to protect against such a situation as this[, e]specially since almost, if not all, hospitals in New Jersey are protected by this doctrine.
>
> Defendant [ACMC] would have discovered the facts had the deposition which he scheduled been taken and not been cancelled by plaintiff's attorney on repeated occasions. Accordingly, the relief requested is granted.

Incidentally, in answer to interrogatory # 18 executed by ACMC on February 8, 1990, it had admitted that "plaintiff was an invitee based upon the fact that her brother was admitted into ICU and she was on the premises to visit him." In fact, ACMC knew well before the October 1989 motion to amend that plaintiff might be vulnerable to the immunity defense.

On December 3, 1990 plaintiff filed a motion for reconsideration and to name as additional, individual defendants, Petrella and Ross, employees of ACMC. By this time, as noted, the two-year statutory period (from December 1, 1987) to file suit had long-since expired. On December 26, 1990 Judge Previti signed an order granting mutual relief to the movants: (1) allowing ACMC to add the immunity defense, and (2) allowing plaintiff to file and serve an amended complaint on Petrella and Ross, who were quickly joined. After the new defendants answered, they moved to dismiss for failure to file the action against them within the two-year period of limitation. *N.J.S.A.* 2A:14–2. On July 26, 1991 Judge Previti denied their motion.

His written decision did not articulate the relation-back theory under *R.* 4:9–3. He found no "unfair prejudice to the new defendants because . . . of allowing the late filing." He stressed the unity of interests of the defendants, ACMC, Petrella and Ross, who were all represented by the same liability insurance carrier, Princeton Group. He deemed his decision granting mutual relief to two sloppy pleaders as an "equitable resolution." He gave this practical justification for his decision:

> There was full and complete opportunity for defense counsel to properly prepare this case as the passage of time has not acted to unfairly prejudice the new defendants in preparing a defense. Indeed, if not named as parties the new defendants may well have been witnesses in the case against the hospital. Certainly this claim is not in the "stale claims" category sought to be avoided by the legislature in enacting the Statute of Limitations.

> We are dealing with a current, viable claim, a defense attorney who was knowledgeable about the case and potential defenses from its inception, who has had ample opportunity to prepare defenses for the hospital and which obviously answers to the new defendants as well and new defendants who are and have been familiar with the case for some time.

After trial, the jury returned a verdict for plaintiff for $33,-775.60. The judge added $7,103.08 in prejudgment interest, a total recovery of $40,878.68. The jury apportioned liability as follows:

| | |
|---|---|
| City of Atlantic City | 0% |
| ACMC | 40% |
| Petrella | 45% |
| Plaintiff | 15% |

Defendant Ross obtained a dismissal on motion before verdict. The defendants', Petrella's and ACMC's, motions for a new trial on liability and damages were denied.

### III

The case presents none of the conventional scenarios for relaxation of the two-year bar of *N.J.S.A.* 2A:14–2. *See e.g., Fernandi v. Strully,* 35 *N.J.* 434, 438, 173 *A.*2d 277 (1961) (discovery rule); *Farrell v. Votator Division of Chemetron Corp.,* 62 *N.J.* 111, 299 *A.*2d 394 (1973) (unknown or unidentifiable potential defendants). However, we conclude that the peculiar procedural context justi-

fied Judge Previti's "equitable resolution" in this case under the relation-back doctrine embodied in *R.* 4:9–3, "When Amendments Relate Back," which reads:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. [*R.* 4:9–3.]

In *Wimmer v. Coombs,* 198 *N.J.Super.* 184, 187, 486 *A.*2d 916 (App.Div.1985), where counsel asserted wife's *per quod* claim but forgot to plead her injury claim, Judge Pressler observed that: "The second sentence of this rule, added to the rule as part of the general 1969 rule revision, deals only with an amendment which adds a new party against whom an already pleaded claim is asserted," the precise situation before us. The conditions for joining a new party are satisfied here because, on the record before us, Petrella and his principal, ACMC, obviously had "received such notice of the institution of the action" that he was not prejudiced "in maintaining his defense on the merits," if any, and "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." *R.* 4:9–3.

The liability insurance carrier for ACMC, Princeton Group, had represented the common defense effort throughout this case. As an experienced insurer of hospitals, physicians and their managers, it knew for certain that assertion of the charitable immunity defense would immediately spark a search for individually liable employee defendants, who were not cloaked with the $10,000 limit on monetary exposure.

As noted, on October 3, 1989, two months before the expiration of the statute of limitations, ACMC's counsel asked for permission

to amend to plead the immunity statute and plaintiff's counsel cordially consented. But, defense counsel never followed through to plead the defense, a pleading which doubtlessly would have provoked a joinder of individual defendants with unlimited liability, or at least a "John Doe" amendment. By the time defense counsel awoke and moved to amend in October 1990, the statute of limitations indeed had run. At that point, the defense interests wanted the comfort of the $10,000 liability limit without the threat of individually-exposed defendant employees at the executive-management level. To resolve the dilemma, Judge Previti provided an "equitable resolution," as he put it.

We do not fault his judgment. We have reviewed defendant Petrella's trial testimony of April 1992. Petrella was also deposed in September 1990, well before trial. He had been assistant director of plant for ten years in 1992. He had been employed by ACMC for 20 years. His management responsibility concededly had included the care of the sidewalks around the hospital since 1982. He had the responsibility to inspect and repair defects in these sidewalks. He tried to get the City to remove the offending "pipe stub" on which plaintiff fell at the corner of Michigan and Pacific Avenues. The City would not remove it. Finally, in February 1989, Petrella had his own men remove the "pipe stub," which he had recognized was a "safety risk." We see no surprise to the interests of the defense and certainly no substantive prejudice to any possible defense on the merits arising from Petrella's late joinder.

We described the reasons for the second sentence in R. 4:9–3 in *Wimmer v. Coombs, supra,* 198 *N.J.Super.* at 188–89, 486 *A.*2d 916, this way:

> In the context of amended pleadings, an accommodation has traditionally been made between the defendant's right to rely on the repose afforded by the statute of limitations and the right of the plaintiff to correct pleading errors or to respond affirmatively to his acquisition of new information respecting his claim. This accommodation is based on the perception that a person who has timely notice of the pendency of an action predicated on his alleged wrongful conduct cannot reasonably object to the late assertion against him of other claims attributable to that conduct provided he is reasonably chargeable with the knowledge that those

other claims would have been timely asserted against him but for plaintiff's error or lack of information and provided further that the late assertion does not prejudice him in maintaining his defense. That is the rationale of the second sentence of *R.* 4:9–3. *See, e.g., Carrino v. Novotny,* 78 *N.J.* 355 [396 *A.*2d 561] (1978); *Farrell v. Votator Div. of Chemetron Corp.,* 62 *N.J.* 111 [299 *A.*2d 394] (1973); *Avdel Corporation v. Mecure,* 58 *N.J.* 264 [277 *A.*2d 207] (1971). *See also Aruta v. Keller,* 134 *N.J.Super.* 522 [342 *A.*2d 231] (App.Div.1975). It is also the rationale of the principle that a plaintiff may amend his complaint after the running of the statute of limitations to assert a direct claim against a third-party defendant impleaded prior to the statute of limitations. *See Lawlor v. Cloverleaf Memorial Park, Inc.,* 56 *N.J.* 326, 339–345 [266 *A.*2d 569] (1970). And it is also the rationale of the interpretation of *R.* 4:26–4 permitting plaintiff to substitute the name of the responsible defendant for the name of a fictitious defendant after the statute of limitations has run. *See Farrell v. Votator Div. of Chemetron Corp., supra.*

See also *Siligato v. State of New Jersey,* 268 *N.J.Super.* 21, 28–29, 632 *A.*2d 837 (App.Div.1993).

The late joinder was really precipitated by defense counsel's error in not amending to plead the immunity defense in 1989, before the statute of limitations ran on the plaintiff. The tardy amendment was certainly to ACMC's benefit if the plaintiff later failed to tag a financially-responsible individual defendant at trial. A collectible verdict then would only have been $10,000 at most. The judge, in effect, on December 26, 1990, conditioned defendant ACMC's right to amend on plaintiff's right to join Petrella who was ACMC's key and only witness in the case and, on this record, the person who best knew the facts pertinent to the alleged defective condition on which the claim was based. "[T]he gist of the action or the basic subject of controversy remain[ed] the same...." *Harr v. Allstate Insurance Co.,* 54 *N.J.* 287, 299–300, 255 *A.*2d 208 (1969); *see Pressler,* Current *N.J.Rules* Comment *R.* 4:9–3, "2. Misidentification of Parties." As the commentator there said, "[w]hat the rule [*R.* 4:9–3, second sentence] does accomplish, consistent with the general aim and policy of these rules, is substantial justice on the merits by permitting a technical and otherwise fatal flaw to be corrected where such correction will not materially prejudice another party." *Ibid.* We affirm Judge Previti's resolution of the dilemma posed in this case as entirely consistent with that principle.

Affirmed.