814 A.2d 627

DOUGLAS WHITE, ADMINISTRATOR OF THE ESTATE OF TRACY WHITE, DECEASED AND DOUGLAS WHITE, IN HIS OWN RIGHT, PLAINTIFF–RESPONDENT, v. ALFRED MATTERA, D.O., WILLIAM MADISON, D.O., DANIEL ABESH, D.O., JOHN DOE, MARY DOE AND JAMES DOE, DEFENDANTS, AND COOPER HOSPITAL/UNIVERSITY MEDICAL CENTER, DEFENDANT–APPELLANT.

Argued October 8, 2002—Decided February 5, 2003.

*Elena B. Zuares* argued the cause for appellant (*Parker, McCay & Criscuolo,* attorneys; *Stacy L. Moore, Jr.,* of counsel).

*Lawrence R. Cohan* argued the cause for respondent (*Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley,* attorneys).

The opinion of the Court was delivered by

ZAZZALI, J.

In this appeal we must determine whether the hospital liability limit of $10,000, subsequently revised to $250,000 in 1991, *N.J.S.A.* 2A:53A–8, applies when the alleged malpractice of a nonprofit hospital occurs in 1986, but its patient does not suffer harm from that malpractice until 1996. The trial court held that the lower limit applied because "the conduct complained of [by plaintiff]"

occurred prior to the effective date of the amendment. The Appellate Division reversed, finding that the amended limit applied because Tracy White did not suffer damage from Cooper Hospital's alleged negligence until after the amendment's effective date. We affirm.

## I.

In May 1986, Tracy White was involved in a automobile accident. She was transported to defendant Cooper Hospital/University Medical Center where she underwent an emergency splenectomy and other orthopedic surgeries to treat injuries to her legs. After spending approximately two months at Cooper Hospital, Tracy was discharged in July 1986. It is undisputed that during her period of hospitalization she did not receive Pneumovax, a pneumococcal vaccine that is administered to patients following a splenectomy. Over the next five years, Tracy continued to receive care and treatment at Cooper Hospital. For example, from July 21, 1991, to July 25, 1991, she was treated for a viral infection associated with her original injuries. Her last visit to Cooper Hospital was in December 1991, when she received treatment at the Hospital's outpatient facility.

Between 1986 and 1996, Tracy suffered from ailments such as upper respiratory infections, occasional fevers, and viral infections, but at no time did she manifest a life-threatening condition. In July 1996, however, she began to experience chronic high fevers and earaches. Despite her taking antibiotics, Tracy's condition gradually deteriorated, and on October 7, 1996, after experiencing a high fever, chills, and fainting spells, she was hospitalized and diagnosed with respiratory distress syndrome caused by pneumococcal sepsis. The next day, Tracy died from complications associated with pneumococcal sepsis.

Shortly thereafter, because of anxiety and sleeplessness associated with his wife's death, plaintiff Douglas White met with Dr. William Madison. During the visit, Dr. Madison, who was one of Tracy's treating physicians, asked plaintiff if he knew whether

Cooper Hospital had given Tracy a pneumococcal vaccine after her splenectomy. Dr. Madison explained that in May 1996 his insurance carrier instructed all participating physicians to vaccinate or revaccinate all asplenic patients as an automatic aspect of treatment. He also informed plaintiff that he did not administer the vaccine to Tracy, nor was he aware of whether the Hospital or any other of Tracy's treating physicians had vaccinated her.

On further inquiry, plaintiff discovered that Tracy did not receive the pneumococcal vaccine between the time of her splenectomy in 1986 and the time of her death in 1996. In 1998, plaintiff brought a wrongful death action, *N.J.S.A.* 2A:31–1 to –6, and a survivorship action, *N.J.S.A.* 2A:15–3, against Cooper Hospital, a nonprofit hospital, and three private physicians. Plaintiff alleged that Cooper Hospital was negligent in failing to administer a pneumococcal vaccine shortly after Tracy's splenectomy, and in failing to educate her about the risk of infection resulting from the removal of her spleen.

In 1991, the Legislature amended *N.J.S.A.* 2A:53A–8 of the Charitable Immunity Act to increase a nonprofit hospital's liability limit from $10,000 to $250,000. Prior to trial, Cooper Hospital filed a motion to enforce the pre-amended statutory limit in the event that it was found liable for negligence. The trial court granted defendant's motion, finding that the "the conduct complained of [by plaintiff] took place in 1986 at which time the hospital limitation of liability was $10,000."

On plaintiff's motion for leave to appeal, the Appellate Division reversed. The parties did not dispute that by operation of the "discovery rule" plaintiff's causes of action accrued in 1996. The panel found that "[j]ust as the discovery rule functions in the statute-of-limitations context to avoid precluding a plaintiff from asserting a substantive right . . ., so too should the rule be applied to afford plaintiff in this case the substantive right of seeking recovery against the hospital up to the post-amendment limit of $250,000." The panel also relied on the plain language of *N.J.S.A.* 2A:53A–8, to hold that the post-amendment limit applied because

Tracy and plaintiff did not "suffer damage" from the Cooper Hospital's alleged negligence until 1996.

We granted Cooper Hospital's motion for leave to appeal. 171 *N.J.* 439, 794 *A.*2d 179 (2002).

## II.

### A

In 1959, the Legislature enacted *N.J.S.A.* 2A:53A–8, which abrogated total immunity for nonprofit hospitals, but limited their liability for negligence to $10,000 in damages. *N.J.S.A.* 2A:53A–8. As noted, thirty-three years later, the Legislature amended the statute to increase the liability limit from $10,000 to $250,000, effective July 31, 1991. *L.* 1991, *c.* 187, § 48. *N.J.S.A.* 2A:53A–8 provides:

Notwithstanding the provisions of the foregoing paragraph [*N.J.S.A.* 2A:53A–7], any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $250,000, together with interest and costs of suit, as the result of any one accident and to the extent to which such damage, together with interest and costs of suit, shall exceed the sum of $250,000 such nonprofit corporation, society or association organized exclusively for hospital purposes shall not be liable therefor.

[*N.J.S.A.* 2A:53A–8.]

In this appeal, we must determine whether that increased liability limit applies when the alleged negligence of a nonprofit hospital occurs prior to the effective date of the amendment, but its patient, the beneficiary, does not suffer harm from that negligence until after the amendment's effective date.

### B

In *Schiavo v. John F. Kennedy Hosp.*, the Appellate Division addressed whether the increased liability limit applies to a claim that arose prior to the effective date of the 1991 amendment. 258 *N.J.Super.* 380, 609 *A.*2d 781 (1992), *aff'd o.b.*, 131 *N.J.* 400, 620 *A.*2d 1050 (1993). There, the defendant hospital failed to diagnose

the plaintiff's ruptured biceps tendon while he was receiving treatment in the emergency room. The hospital's negligence occurred and the plaintiff's cause of action accrued prior to July 31, 1991. *Id.* at 383, 609 *A.*2d 781. The only issue before the court was whether the increased liability limit applied retroactively "to claims accruing prior to the July 31, 1991 effective date." *Id.* at 382–83, 609 *A.*2d 781. For present purposes, the critical holding in *Schiavo* is that the 1991 amendment applies prospectively "only to claims *accruing* on or after the effective date of the amendment." *Id.* at 383, 609 *A.*2d 781 (emphasis added). The court did not define when a claim "accrues."

Cooper Hospital argues that the *Schiavo* court used the term "accrual" as a matter of convenience because in that case the alleged malpractice occurred and the plaintiff's cause of action accrued prior to the effective date of the amendment. It contends that consistent with *Schiavo's* finding that the Legislature increased the liability limit to "motivate future conduct, not to enhance liabilities for past claims," *id.* at 386, 609 *A.*2d 781, the 1991 amendment should apply only when a nonprofit hospital's alleged negligent act or omission "occurred" on or after the effective date of the amendment, irrespective of the date on which a plaintiff first had the right to maintain a cause of action for malpractice against that hospital.

■ We disagree. A cause of action "accrues" on the date when "'the right to institute and maintain a suit' first arose." *Rosenau v. City of New Brunswick,* 51 *N.J.* 130, 137, 238 *A.*2d 169 (1968) (quoting *Fredericks v. Town of Dover,* 125 *N.J.L.* 288, 291, 15 *A.*2d 784 (E & A 1940)). " 'Accrual' is a technical term found in statutes of limitations to denote the date on which the statutory clock begins to run." *Ali v. Rutgers,* 166 *N.J.* 280, 286, 765 *A.*2d 714 (2000). We glean from *Schiavo* that the Legislature intended the increased limit to apply prospectively to a claim in which a patient suffers actual injury or damage from a hospital's alleged negligence on or after effective date of the 1991 amendment. We

find support for this conclusion in the plain language of the hospital liability statute. *N.J.S.A.* 2A:53A–8.

"[W]hen interpreting a statute, our overriding goal must be to determine the Legislature's intent." *Hubbard v. Reed*, 168 *N.J.* 387, 392, 774 *A.*2d 495 (2001) (quoting *State, Dep't of Law & Pub. Safety v. Gonzalez*, 142 *N.J.* 618, 627, 667 *A.*2d 684 (1995)). As a general rule, the Court must first look to the plain language of the statute. *Ibid.* (citing *State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399•(1982)). If that language is clear on its face, " 'the sole function of the court[ ] is to enforce it according to its terms.' " *Couri v. Gardner*, 173 *N.J.* 328, 334, 801 *A.*2d 1134 (2002)(quoting *Sheeran v. Nationwide Mut. Ins. Co.*, 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979)).

The plain language of *N.J.S.A.* 2A:53A–8 provides that a nonprofit hospital "shall be liable . . . to [a] *beneficiary* who shall *suffer damage* from the [hospital's] *negligence.*" *N.J.S.A.* 2A:53A–8 (emphasis added). Under general principles of tort law, "there are two essential elements of a cause of action based on the alleged negligence of a tortfeasor which must exist in order to make that cause of action viable and a suit based thereon maintainable, namely, the act of negligence itself and a consequential injury resulting therefrom." *Montag v. Bergen Bluestone Co.*, 145 *N.J.Super.* 140, 144, 366 *A.*2d 1361 (1976); *see also Ochs v. Public Serv. Ry. Co.*, 81 *N.J.L.* 661, 662, 80 *A.* 495 (E. & A.1911); *Kovacs v. Everett*, 37 *N.J.Super.* 133, 137, 117 *A.*2d 172 (App.Div.1955), *certif. denied, Kovach v. Kovacs*, 20 *N.J.* 466, 120 *A.*2d 66 (1956). Mere knowledge of a negligent act is insufficient to institute a cause of action for negligence; it is essential that a plaintiff also demonstrate that he or she has suffered actual injury or damages before a cause of action "accrues." *Rosenau, supra,* 51 *N.J.* at 137–38, 238 *A.*2d 169 (citations and quotations omitted).

The parties do not dispute that Tracy White was a beneficiary of Cooper Hospital when she underwent her emergency splenectomy in 1986. It is also undisputed that Cooper Hospital failed to inoculate Tracy with a pneumococcal vaccine between the time of

her splenectomy in 1986 and the time of her death in 1996. That omission presents a colorable claim that the Hospital was negligent. The remaining critical inquiry, then, is when Tracy White "suffer[ed] damage" from Cooper Hospital's alleged negligence. If she suffered damage prior to July 31, 1991, the Hospital's liability is limited to $10,000 in damages. Conversely, if she suffered damage on or after July 31, 1991, then the Hospital's liability is limited to $250,000 in damages.

## III.

### A

The panel below found that White did not "suffer damage" until October 1996, when she was diagnosed with respiratory distress syndrome caused by pneumococcal sepsis. In response, Cooper Hospital contends that White suffered damages in May 1986, when it allegedly failed to administer the pneumococcal vaccine, thereby increasing the risk of Tracy's susceptibility to pneumococcal sepsis.

Although Cooper Hospital was allegedly negligent in failing to administer the pneumococcal vaccine to White prior to the 1991 amendment, White had no discernable injuries—no damages—until she contracted pneumococcal sepsis in October 1996, which resulted in her death on October 8, 1996. Before that time, she had no cause of action for negligence against Cooper Hospital. *See Muller Fuel Oil Co. v. Insurance Co. of N. Am.,* 95 *N.J.Super.* 564, 579, 232 *A.*2d 168 (App.Div.1967) ("The tort of negligence is not committed unless and until some damage is done."); *see also* Prosser, *Torts,* § 30 at 143 (4th ed.1971)(noting that actual loss or damage as essential element of cause of action for negligence); *Black's Law Dictionary* 29 (6th ed.1990) (defining essential elements of "actionable negligence" as "failure to exercise due care, injury, or damage, and proximate cause"). The plain language of *N.J.S.A.* 2A:53A–8 requires that a hospital's beneficiary "suffer damage" before that hospital is subject to suit under the Charita-

ble Immunity Act. We hold that under the circumstances of this case, when Cooper Hospital's alleged negligent act or omission occurred prior to the amendment's effective date, but its beneficiary, Tracy White, did not suffer harm from that negligence until after that date, the increased hospital liability limit of $250,000 is applicable to plaintiff's claims against the Hospital.

**B**

For purposes of completeness, we add the following.

■ The panel below found that "[j]ust as the discovery rule functions in the statute-of-limitations context to avoid precluding a plaintiff from asserting a substantive right (a cause of action for a tortious act), so too should the rule be applied to afford plaintiff in this case the substantive right of seeking recovery against the hospital up to the post-amendment limit of $250,000." Cooper Hospital asserts that the panel's reliance on the discovery rule to determine the applicability of the increased liability limit under *N.J.S.A.* 2A:53A–8 is in conflict with *Fernandez v. Jersey City Med. Ctr.*, 336 *N.J.Super.* 594, 765 *A.2d* 1073 (App.Div.2001).

In *Fernandez*, the Appellate Division held that the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, did not apply in a case in which the defendant hospital's misdiagnosis of the plaintiff's breast cancer occurred before the statute's effective date. The court reasoned that by virtue of the discovery rule, the plaintiff's cause of action did not accrue until after the effective date of the statute. *Id.* at 594, 765 *A.2d* 1073. The court focused on the underlying facts giving rise to the plaintiff's cause of action in negligence against the hospital, finding the statute inapplicable to the plaintiff's claim. It found that the discovery rule does not "alter the happening of events or facts," but "simply delays accrual of the cause of action, for statute of limitations purposes, until the injured party reasonably discovers that a wrong has been done." *Ibid.* Because the underlying facts constituting the hospital's alleged malpractice occurred prior to the effective date of the

statute, the court found that the statute did not apply to the plaintiff's claim. *Ibid.*

Although we agree with the Hospital that the discovery rule is inapposite to this appeal, we disagree with its assertion that *Fernandez* dictates a different result than the one reached in this case. The discovery rule tolls running of the statute of limitations from the date a plaintiff is harmed by the negligence of a tortfeasor until that plaintiff discovers or should have discovered through reasonable diligence his or her injury. *See Lopez v. Swyer*, 62 *N.J.* 267, 272, 300 *A.2d* 563 (1973)(providing "that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim"). That rule is irrelevant to the disposition of this appeal, however, because Tracy White did not "suffer harm" prior to the amendment of the statutory liability cap. Although it is undisputed that plaintiff did not discover Cooper Hospital's alleged negligence until after amendment of the liability limit, that fact does not affect our disposition.

As in *Fernandez,* we look to the underlying facts giving rise to Tracy White's cause of action to determine the applicability of the increased liability limit, *N.J.S.A.* 2A:53A-8. Unlike *Fernandez,* which involved an application of the Affidavit of Merit statute, we do not look to when the Hospital's negligent act or omission occurred as the determinative date for applicability of the increased liability limit, but rather, as prescribed by the plain language of *N.J.S.A.* 2A:53-8, to when the Hospital's "beneficiary," in this case Tracy White, "suffer[ed] damage" from that alleged negligence. It is that point—when a patient sustains actual damage from a hospital's negligent act or omission—that serves as the appropriate date for determining the applicability of the 1991 amendment, *N.J.S.A.* 2A:53A-8. Having found that Tracy White did not suffer damage from the Hospital's alleged negligence until after the amendment's effective date, we hold that

the increased liability limit of $250,000 applies to plaintiff's claims against the Hospital.

## IV.

Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.