applied to his failure to appear. *See Lee, supra,* 96 *N.J.* at 167, 475 *A.*2d 31.

Accordingly, the order of the trial court dismissing the failure to appear charge against defendant is reversed, and the case is remanded to the trial court for further proceedings in conformity with this opinion.

936 A.2d 469

NL INDUSTRIES, INC., PLAINTIFF–RESPONDENT v. NEW JER-
SEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DE-
FENDANT–APPELLANT, AND SAYREVILLE ECONOMIC AND
REDEVELOPMENT AGENCY, INTERVENOR–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 26, 2007—Decided December 19, 2007.

128

Before Judges WEFING, PARKER and R.B. COLEMAN.

*Joseph C. Fanaroff,* Deputy Attorney General, argued the cause for defendant-appellant (*Anne Milgram,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Mr. Fanaroff,* on the brief).

*Gage Andretta,* argued the cause for intervenor-appellant (*Wolff & Samson,* attorneys; *Mr. Andretta* and *Thomas Sabino,* on the brief).

*Christopher R. Gibson,* argued the cause for respondent (*Archer & Greiner,* attorneys; *Mr. Gibson,* of counsel; *Patrick M. Flynn,* on the brief).

The opinion of the court was delivered by

WEFING, P.J.A.D.

NL Industries, Inc. ("NL") filed a verified complaint seeking a declaratory judgment that *N.J.S.A.* 58:10B–3.1 did not authorize defendant New Jersey Department of Environmental Protection ("DEP") to remove or replace NL as the party performing certain environmental remediation on property located in Sayreville and previously owned by NL. Sayreville Economic and Redevelopment Authority ("SERA"), who had obtained title to the property through eminent domain, intervened in the declaratory judgment

action. The trial court eventually entered an order in which it denied DEP's motion to dismiss NL's complaint, granted NL's motion for summary judgment, and denied SERA's motion for summary judgment. DEP and SERA have appealed from that order. After reviewing the record in light of the contentions advanced on appeal, we affirm, but for reasons other than those stated by the trial court.

The parties' dispute revolves around a tract of land approximately four hundred acres in size that fronts on the Raritan River and was used by NL for industrial purposes for many years. This appeal is not the first time the parties have brought their disputes to this court. In 2007 we affirmed the trial court's grant of summary judgment to NL, holding that NL could not be removed as the remediating party for this site unless it had been declared in default of its cleanup obligations. DEP not having declared NL to be in such default, NL could not be removed as the remediating party. *NL Indus. v. N.J. Dep't of Envtl. Prot.*, Nos. A–5804–04T2 and A–6094–04T2, 2007 *WL* 622216 (App.Div. March 2, 2007).

Within that opinion we set forth the history of this site and the disputes that have arisen between the parties in connection with the efforts at remediation and SERA's many attempts to replace NL as the remediating party. There is no need to restate that history here; it is not material to the issue before us.

At the conclusion of that opinion, we noted that the Legislature had only recently adopted *N.J.S.A.* 58:10B–3.1. We further noted that the trial court had not had the opportunity to consider the effect of that statute upon the rights and duties of the parties and that NL had already filed a declaratory judgment action seeking relief with respect to that statute. We thus declined to consider the question in connection with that earlier appeal. The order before us on this appeal was entered in connection with the declaratory judgment action to which we referred and thus the question of the effect, if any, of *N.J.S.A.* 58:10B–3.1 upon these parties and this site is squarely before us.

## I

■ We turn first to the question whether the trial court had jurisdiction to entertain NL's declaratory judgment action. DEP argues that the trial court did not have jurisdiction and thus should not have proceeded to rule on the merits of the question. DEP presented a substantially similar argument in connection with its earlier appeal. In that appeal we stated:

We reject the DEP's argument that the order under review should be reversed because the matter should have been commenced in the first instance in this court under *R.* 2:2–3(a)(2). That rule provides in pertinent part that actions "to review final decisions or actions of any state administrative agency or officer" shall be brought directly in the Appellate Division. The DEP has yet to make a "final decision" or take a "final action." Exchange of correspondence between SERA and the DEP with regard to the willingness of the DEP to enter a Memorandum of Agreement with SERA does not contain the "unmistakable notice of [ ] finality" required to constitute a final administrative decision. *In re CAFRA Permit No. 87–0959–5,* 152 *N.J.* 287, 299, 704 *A.2d* 1261 (1997).

Indeed, it is that very lack of finality that the DEP utilizes to support the second prong of its argument on jurisdiction, that the matter is premature. NL contends in response that it is entitled nonetheless to relief under the Declaratory Judgment Act, *N.J.S.A.* 2A:16–50 to –62. *N.J.S.A.* 2A:16–53 defines "questions determinable and rights declarable" as follows:

A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

This statute "empowers the courts to declare rights, status and other legal relations 'to afford litigants relief from uncertainty and insecurity.'" *In re Ass'n of Trial Lawyers,* 228 *N.J.Super.* 180, 183, 549 *A.2d* 446 (App.Div.), *certif. denied,* 113 *N.J.* 660, 552 *A.2d* 180 (1988) (quoting *U.S.A. Chamber of Commerce v. State,* 89 *N.J.* 131, 140, 445 *A.2d* 353 (1982)). "Its purpose is to end uncertainty concerning the legal rights and relations of parties before they have suffered ineradicable damage or injury for which only a compensatory or coercive remedy can provide redress." *Ibid.*

Although our courts have consistently refused to be drawn into issuing advisory opinions, *ibid.*; *In re Park–Madison Site,* 372 *N.J.Super.* 544, 859 *A.2d* 1232 (App.Div.2004); *JUA Funding Corp. v. CNA Insurance Co.,* 322 *N.J.Super.* 282, 730 *A.2d* 907 (App.Div.1999); *Binkowski v. State,* 322 *N.J.Super.* 359, 731 *A.2d* 64 (App.Div.1999), declaratory relief is nonetheless appropriate "when there is an actual dispute between parties who have a sufficient stake in the outcome." *N.J. Ass'n for Retarded Citizens v. Dept. Human Services,* 89 *N.J.* 234, 241, 445 *A.2d*

704 (1982); *Registrar & Transfer Co. v. Director, Div. of Tax.*, 166 *N.J.Super.* 75, 78, 398 *A.*2d 1335 (App.Div.) (noting that plaintiff's declaratory judgment action was properly brought to "adjudicat[e] [plaintiff's] rights under the tax statute where there existed a bona fide controversy that had not yet reached the stage at which either party could have sought a coercive remedy"), *certif. denied,* 81 *N.J.* 63, 404 *A.*2d 1161 (1979). The declaratory judgment statute is "remedial legislation entitled to liberal construction and administration." *N.J. Ass'n, supra,* 89 *N.J.* at 241–42, 445 *A.*2d 704. Accordingly, a declaratory judgment may issue "when to do so would be just and fair." *Id.* at 241, 445 *A.*2d 704.

We find no error in the trial court's determination that NL properly framed its action as one seeking declaratory relief. A dispute had existed between the parties for more than three years as to whether the DEP and SERA had the right to act to supersede NL in its cleanup of this contaminated property absent a finding that NL had defaulted in some manner on its obligations. SERA had estimated its costs to complete the remediation of this site at nearly three times the amount that NL had estimated. The DEP, however, had previously indicated that NL's estimate was reasonable when it accepted NL's self-guarantee for that lesser sum.

SERA, of course, was not proposing that it would pay these sums completely on its own (indeed, its limited budget made that all but impossible) but would look to NL, as the owner responsible for the contamination in the first instance, to make SERA whole. We are satisfied that NL, faced with the prospect of losing the authority to direct this remediation project and being compelled to pay substantially more to have someone else complete the task without any indication that its work to date has been inadequate, had a "sufficient stake" to warrant declaratory relief. *N.J. Ass'n, supra,* 89 *N.J.* at 241, 445 *A.*2d 704.

We are, moreover, cognizant of the significant public interest involved in having this cleanup project continue on an uninterrupted basis through completion. If NL were to wait until a formal removal action occurred before it challenged the validity of such a step, the remediation would be threatened by delay and uncertainty. In the context of this matter, we are satisfied that NL acted properly when it invoked the declaratory judgment jurisdiction of the trial court.

[*NL Indus., supra,* Nos. A–5804–04T2 and A–6094–04T2, 2007 *WL* 622216 at *3–*5.]

█ In addition, the DEP contends in connection with this appeal that the trial court did not have jurisdiction because such a declaratory judgment action properly belongs in the Law Division. The argument disregards the fact that the Superior Court is a unitary court. *Boardwalk Props., Inc. v. BPHC Acquisition, Inc.,* 253 *N.J.Super.* 515, 526, 602 *A.*2d 733 (App.Div.1991) ("The jurisdiction of the Chancery Division to adjudicate all controversies brought before it and render both legal and equitable remedies is co-extensive with that of the Law Division."). We are satisfied the trial court properly entertained NL's complaint.

## II

We turn now to the parties' substantive arguments with respect to their rights and responsibilities under this statute. The statute provides in pertinent part as follows:

> If a local government unit condemns contaminated property ... and the property is undergoing a remediation, the local government unit may petition the [DEP] ... for authority to perform the remediation of the condemned property. The department, upon a determination that the local government unit has demonstrated sufficient resources to perform the remediation, may replace the person performing the remediation ... with the local government unit that has condemned the property, provided that, at the time the condemnation action is filed, more than four years have elapsed since the person performing the remediation first entered into an oversight document for the site with the [DEP] and the person has not begun implementation of a remedial action workplan for each area of concern on the property. The department shall not replace the person performing the remediation of the condemned property unless the local government unit enters into an appropriate oversight document with the department to perform the remediation.
>
> [*N.J.S.A.* 58:10B–3.1.]

NL argued to the trial court, and the trial court agreed, that *N.J.S.A.* 58:10B–3.1 provides no authority for DEP to replace NL as the remediating party with SERA because the statute limits the DEP's power of substitution to sites for which an oversight document has been executed, and NL was proceeding to clean up the vast majority of this site without having entered into an oversight document. NL stressed that the cleanup of the site as a whole was proceeding before the DEP under separate cases under the Industrial Site Recovery Act ("ISRA"), *N.J.S.A.* 13:1K–6 to – 35. The twenty-acre portion of the site generally referred to as the Marsulex tract was being cleaned up under an administrative consent order as ISRA case 89331. The balance of the four-hundred-acre tract was being cleaned up under the general supervision of the DEP and with its approval as ISRA case 88768, but without NL having entered into a formal administrative consent order.

On appeal, the DEP contends that the manner in which the trial court construed this statute would permit it to substitute SERA for NL as the remediating party for the twenty-acre Marsulex

tract but not for the balance of the site. This, the DEP asserts, greatly weakens the scope of the statute and it urges that we should construe this statute in a manner that would avoid this result.

We recognize the principles of statutory construction to which the DEP points in support of its argument. We are satisfied, nonetheless, that they are inapplicable to the present question, and are more properly addressed to the Legislature. A court's "overriding goal in interpreting a statute is to determine the Legislature[']s intent." *Brodsky v. Grinnell Haulers, Inc.*, 181 *N.J.* 102, 109, 853 *A.*2d 940 (2004). "If it is clear, 'the sole function of the courts is to enforce [the statute] according to its terms.'" *U.S. Sportsmen's Alliance Found. v. N.J. Dep't of Envtl. Prot.* 182 *N.J.* 461, 469, 867 *A.*2d 1147 (2005) (quoting *Hubbard ex rel. Hubbard v. Reed,* 168 *N.J.* 387, 392, 774 *A.*2d 495 (2001)). "When the words of the statute do not provide a clear answer, then the context of those words in relation to other provisions of the statute may reveal their meaning," and if it is still not clear, the court should look to the legislative history. *Brodsky, supra,* 181 *N.J.* at 110, 853 *A.*2d 940.

> [W]hen a statute is subject to more than one plausible reading, our role is to effectuate the legislative intent in light of the language used and the objects sought to be achieved. In the end, our interpretation will not turn on literalisms but on the breadth of the objectives of the legislation and the commonsense of the situation.
>
> [*U.S. Sportsmen's Alliance, supra,* 182 *N.J.* at 469, 867 *A.*2d 1147 (internal citations omitted).]

The statute itself does not contain a definition of the term "oversight document." The parties point to the definition of "oversight document" contained within the administrative code, and the trial court relied upon that definition in coming to its conclusion. That definition provides the following:

> "Oversight document" means any document the Department or a court issues to define the role of a person participating in the remediation of a contaminated site or area of concern, and may include, without limitation, an administrative order, administrative consent order, court order, memorandum of understanding, memorandum of agreement, or remediation agreement.
>
> [*N.J.A.C.* 7:26C–1.3.]

The trial court construed this regulation as "exclusively" limiting an oversight document to administrative consent orders, court orders, memoranda of understanding, memorandum agreements, or remediation agreements. We are satisfied that the trial court erred in this construction for it overlooks the significance of the phrase "without limitation." By including that phrase within the definition, the DEP clearly signaled its intention that an oversight document could include something beyond those specifically listed exemplars. The trial court's interpretation, however, limited an oversight document to those items identified within the definition rather than giving effect to the meaning of the phrase, "without limitation."

That we decline to adopt the interpretive framework utilized by the trial court does not, however, lead to a reversal of the trial court's order. SERA argued to the trial court, and urges to us, that the term "oversight document" within *N.J.S.A.* 58:10B–3.1 should be construed to mean any writing that formalizes a party's role in remediating a site. Adopting such a construction would mean that virtually any of the documents that might be exchanged during the course of remediation could qualify as an "oversight document." It has not escaped our notice that the DEP did not urge such a position to the trial court and does not make that argument to us now.

Rather, we agree with the analysis of NL, that the language of *N.J.S.A.* 58:10B–3.1, with its reference to having "entered into an oversight document" indicates a bi-lateral document, executed by the DEP and the remediating party. Neither the DEP nor SERA contend that such a document exists for anything other than the Marsulex portion of the NL site.

We do not agree with the DEP and SERA that to construe the statute in this manner would disregard the legislative intent and lead to anomalous results. The removal of one remediating party, and the substitution of another, may entail significant financial consequences for the party that is removed in light of the fact that it may remain ultimately responsible for the costs of the cleanup

but will have no ability to control those costs. In view of that potential, it is only appropriate, in our judgment, that the Legislature did not grant the DEP the unlimited ability to replace a remediating party with another entity but, rather, referred to a remediating party operating under an oversight document.

### III

■ The trial court also concluded that *N.J.S.A.* 58:10B–3.1 could not be construed to authorize the DEP to remove NL as the remediating party because in the view of the trial court, to do so would improperly give retroactive effect to the statute. We do not agree with the trial court's analysis in this regard.

■ The general rule is that " 'statutes relating to substantive rights should be construed prospectively unless the legislature indicates otherwise.' " *Schiavo v. John F. Kennedy Hosp.,* 258 *N.J.Super.* 380, 384, 609 *A.*2d 781 (App.Div.1992) *aff'd o.b.* 131 *N.J.* 400, 620 *A.*2d 1050 (1993) (quoting *Brown v. State Dep't of Personnel & City of Atlantic City,* 257 *N.J.Super.* 84, 88, 607 *A.*2d 1354 (App.Div.1992) (statute increasing from $10,000 to $250,000 the liability ceiling for a hospital did not apply to claims accruing prior to the statute's effective date)).

■ Generally, a statute may be given retroactive effect in three circumstances:

(1) the legislature has expressed, either explicitly or implicitly, its intent that the statute apply retroactively;

(2) the statute is curative; or

(3) the expectation of the parties warrant the retroactive application of the statute. [*Id.* at 385, 609 *A.*2d 781.]

NL contends that there is no such expression of legislative intent; the statute cannot be deemed curative as that term is generally understood, *Kendall v. Snedeker,* 219 *N.J.Super.* 283, 287, 530 *A.*2d 334 (App.Div.1987); and the parties' expectations do not warrant retroactive application. NL's argument, in our judgment, is too restrictive.

Our Supreme Court has recently addressed the curative exception to the retroactive application of recently-enacted statutes. *2nd Roc–Jersey Assocs. v. Town of Morristown*, 158 *N.J.* 581, 731 *A.*2d 1 (1999). In that case, the Court upheld an amendment to the statute governing special improvement districts authorizing exemption of residential properties from assessments levied by such districts. In the course of its opinion, the Court noted that the statute in question had been adopted in response to a decision of this court that had struck down a special improvement district ordinance because it had exempted residential properties from such assessments. The Court held that the amendment came within the curative exception because "[i]t was enacted in direct response to the Appellate Division's [ ] decision. . . ." *Id.* at 605, 731 *A.*2d 1. Here, there is no doubt that *N.J.S.A.* 58:10B–3.1 was enacted in direct response to the decision of the trial court, later affirmed by this court, that NL could not be removed as a remediating party absent some failure on its part to fulfill its obligations. Under the Court's analysis in *2nd Roc–Jersey*, we deem the statute curative.

Further, courts generally address questions of retroactivity in the context of "transactions and events completed prior to [the statute's] enactment." *Schiavo, supra*, 258 *N.J.Super.* at 385, 609 *A.*2d 781 (quoting 1A Norman J. Singer, *Sutherland on Statutes and Statutory Construction* § 22.36 at 300–01 (4th ed. 1986)). Here, we are not dealing with completed transactions and events but, rather, with an on-going process.

Additionally, to adopt NL's position would mean that four years would have to pass before the DEP could exercise the power conferred upon it under this statute. Such a construction would not further the legislative goal of prompt remediation of contaminated sites but only serve to frustrate it.

NL's final argument is that it would be unconstitutional to apply this statute retroactively. There are two aspects to the analysis of a statute's constitutionality: is the statute unconstitutional on its face or is it unconstitutional as applied. We have already set forth

our reasons for determining that there is no facial bar to this statute being applied to the Marsulex tract. We decline on this record to address the second prong, whether the statute would be unconstitutional as applied. That analysis must await some action on the part of the DEP to replace NL with SERA as the remediating party for the Marsulex tract. It would only be at that time that an appropriate record could be created under which such a claim could be analyzed.

The order under review is affirmed.